**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

JAMES RIVER INSURANCE COMPANY,

       Plaintiff/Counter-defendant,

vs.                           CASE NO:

SA-TECH ENGINEERING, INC.,

       Defendant/Counter-plaintiff.

_____ /



FILED by _____ D.C.

MAR 1 8 2010

STEVEN M. LARIMORE
CLERK U S DIST CT
S. D. of FLA - MIAMI

## NOTICE OF REMOVAL

     JAMES RIVER INSURANCE COMPANY ("James River") sets forth its grounds for removal as follows:

     1.    James River filed suit against SA-Tech Engineering, Inc. ("SA-Tech") in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 502009CA040825XXXXMB AJ, to collect a deductible due under an insurance policy issued by James River to SA-Tech.

     2.    SA-Tech filed and served a counterclaim against James River on March 2, 2010.

     3.    In the counterclaim, SA-Tech alleges breach of contract and fraudulent inducement, reasoning that SA-Tech's good name and reputation was irreparably harmed after James River improperly settled a claim for professional negligence against SA-Tech.

     4.    James River was at all times, including at the time this action was commenced and this Notice filed, an Ohio corporation with its principal place of business in Richmond, Virginia. James River is accordingly a citizen of the states of Ohio and Virginia.

5.      SA-Tech was at all material times, including at the time this action was commenced and at the time this Notice was filed, a Florida corporation with its principal address in Boca Raton, Florida 33431.  SA-Tech is accordingly a citizen of the state of Florida.

6.      From the allegations of the counterclaim, it is evident that the amount in controversy is in excess of $75,000, exclusive of interest, attorney's fees, and costs.

7.      Because the parties are citizens of different states, and because the amount in controversy is now in excess of $75,000, exclusive of interest, attorney's fees and costs, this action is removable to this Court pursuant to 28 U.S.C. § 1441.

8.      Pursuant to 28 U.S.C. § 1446 (a), a copy of all process, pleadings and orders served upon James River and SA-Tech as of the date of this Notice are attached as composite Exhibit "A."

9.      Pursuant to 28 U.S.C. § 1446(b), this Notice is filed within thirty (30) days of when it was "first … ascertained that the case is one which is or has become removable…."

10.     A copy of this Notice will be promptly filed with the Clerk of the Circuit Court of the Fifteenth Judicial Circuit in Palm Beach County, Florida, and served on all interested parties.

WHEREFORE, James River respectfully requests this Court remove this action, which is currently pending in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida pursuant to the provisions of 28 U.S.C. § 1441.

14471487v1  908418  57476

Respectfully Submitted,

_____

**SINA BAHADORAN**
Florida Bar No. 523364
sbahadoran@hinshawlaw.com
**ERIC A. HILLER**
Florida Bar No. 0027920
ehiller@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document was served via overnight mail on March 17, 2010, to: Robert J. Levine, Esquire, Levine & Partners, P.A. 1110 Brickell Avenue, Suite 700, Miami, Florida 33131.

_____
Sina Bahadoran

14471487v1 908418 57476

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO:  50 – 2009CA 040825 XXXXMB

JAMES RIVER INSURANCE
COMPANY,

       Plaintiff,

vs.

                              **NOTICE OF APPERANCE**

SA-TECH ENGINEERING, INC.,

       Defendant.

_____/

      PLEASE TAKE NOTICE that the undersigned hereby appears as attorneys for Defendant, SA-TECH ENGINEERING, INC., in the above styled cause.

      WE HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed this _____ day of JANUARY 2010, to:   THOMAS J. MACCARI, ESQUIRE, THOMAS J. MACCARI, P.A., Attorneys for Plaintiff, 7700 Congress Ave., Suite 1133, Boca Raton, FL 33487.

                          LEVINE & PARTNERS, P.A.
                          ATTORNEYS FOR DEFENDANT,
                          SA TECH ENGINEERING, INC.
                          1110 BRICKELL AVE., SUITE 700
                          MIAMI, FLORIDA 33131
                          (305) 372-1350

                          BY: _____
                              ROBERT J. LEVINE, ESQUIRE
                            FLORIDA BAR NO: 320048



E:\WORK\FIRM\NEW\SA TECH N APPEARANCE.doc

PLR

# PALM BEACH COUNTY SHERIFF'S ORIGINAL RETURN

SA-TECH ENGINEERING INC

Court  Palm Beach
Circuit Court
Case #  **CA-09-40825-MB**
1

9989 MARSALA WY
DELRAY BEACH, FL 33446

TYPE OF WRIT

SUMMONS & copy & copy of complaint

THOMAS J. MACCARI, PA
7700 CONGRESS AVE, STE 1133
BOCA RATON, FL 33487

PLAINTIFF:  **JAMES RIVER INSURANCE COMPANY**

SERVICE $  40.00
CHECK  2637
PD

COST

DEFENDANT:  SA-TECH ENGINEERING INC

AT: 2:45:36 pm

Received this writ on the _____ **10th** _____ Day of _____ **December** _____ A.D. 20 **09** _____ and served the same on the within named person at 10:12 (AM)/PM on the 12th day of Dec., A.D. 09 in Palm Beach County Florida, a true copy of this Writ, endorsed thereon by me, * with a copy of the Complaint, Petition, or other Pleadings (*not applicable to service of Subpoena.)

❑ INDIVIDUAL SERVICE

❑ SERVICE TO PERSON IN REPRESENTATIVE CAPACITY / designated recipient of process/records custodian/parent or guardian of a minor, to wit:
_____ as _____
(name)    (capacity)

❑ SUBSTITUTE SERVICE at usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents, to wit: _____ as _____
(name)    (relationship)

❑ CORPORATE SERVICE
To _____ holding corporate office of _____
To Yonah Saddick _____ as registered agent of said corporation.
To _____ as employee of said corporation, due to failure to comply with F.S. 48.091. Attempts to serve officer or registered agent: date _____ time _____, date _____ time _____.

❑ SOLE PROPRIETORSHIP (D/B/A)
To _____ as owner.
To _____ as manager. Attempts to serve owner at place of business: date _____ time _____, date _____ time _____.

❑ PARTNERSHIP
To _____ as partner.
To _____ as designated employee or agent for service.

❑ POSTING by attaching a copy to a conspicuous place on the property described by the complaint or summons. If applicable:
Attempts to serve resident/tenant in action for possession: date _____ time _____, date _____ time _____.
Posted per map, property description: _____

❑ NON-SERVICE: Person notified _____, date _____ time _____. (See remarks below.)

❑ SUPPLEMENTAL INFORMATION _____

_____

_____

_____

_____

_____

_____

By _____ 7505 _____
Deputy Sheriff

Ric L. Bradshaw
Sheriff of Palm Beach County, Florida

Note: Only that service indicated by the X is applicable to this return - all other portions should not be considered.

ATTORNEY'S COPY

deductible more specifically set forth in Exhibit "B" attached hereto.

      10.     That Plaintiff has performed all conditions precedent to this action.

      WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

> THOMAS J. MACCARI, P.A.
> Attorney for Plaintiff
> 7700 Congress Avenue, Suite 1133
> Boca Raton, Florida 33487
> Telephone:(561) 982-9772
> Florida Bar #709670
>
>
> By:_____
>         THOMAS J. MACCARI

3

<u>CIVIL COVER SHEET</u>

I.  CASE STYLE:

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.
FLORIDA BAR NO. 709670

JAMES RIVER INSURANCE COMPANY,

     Plaintiff,

vs.

SA-TECH ENGINEERING, INC.,

     Defendant.

_____/

II.  TYPE OF CASE:

| <u>DOMESTIC RELATIONS</u> | <u>TORTS</u> | <u>OTHER CIVIL</u> |
|---|---|---|
| Simplified dissolution | Professional Malpractice | Contracts |
| Dissolution | Products liability | Condominium |
| Support IV-D | Auto negligence | Real property/ |
| Support-Non IV-D | Other negligence | Mortgage fore |
| Uresa IV-d | | Eminent domain |
| Domestic violence | | XX  Other |
| Other domestic relations | | |

III.  Is Jury Trial Demanded in Complaint?  No.

DATED this ___6ᵗʰ___ day of ___October___, 2009.

Signature of Party Initiating Action:

_____

THOMAS J. MACCARI, ESQUIRE
Thomas J. Maccari, P.A.

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.
Florida Bar No. 709670

JAMES RIVER INSURANCE COMPANY,

        Plaintiff,

vs.                               SUMMONS

SA-TECH ENGINEERING, INC.,

        Defendant.
_____/

THE STATE OF FLORIDA:

    To All and Singular the Sheriffs of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant, SA-TECH ENGINEERING, INC., by serving:

**YONAH SADDICK, R.A.**
**Or any other officer, director or managing agent at:**
**9989 Marsala Way**
**Delray Beach, FL  33446**

    Each Defendant is required to serve written defenses to the Complaint or Petition on THOMAS J. MACCARI, ESQ., Plaintiff's attorney, whose address is:  THOMAS J. MACCARI, P.A., 7700 Congress Avenue, Suite 1133, Boca Raton, FL  33487, within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

    WITNESS my hand and seal of this Court on _____.

                            Sharon R. Bock
                            As Clerk and Comptroller


                            _____
                            As Deputy Clerk

*"IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, PERSONS IN NEED OF A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHALL, WITHIN A REASONABLE TIME PRIOR TO ANY PROCEEDING, CONTACT THE ADMINISTRATIVE OFFICE OF THE COURT, 205 NORTH DIXIE HIGHWAY, ROOM 5.25, WEST PALM BEACH, FLORIDA 33401, TELEPHONE (561) 355-2431, 1-800-955-8771 (TDD), OR 1-800-955-8770 (V), VIA FLORIDA RELAY SERVICE".

" DAPRE AKO KI FET AVEK AMERICANS WITH DISABILILTIES ACT, TOUT MOUN KI GINYIN YUN BEZWEN ESPESIYAL POU AKOMODASIYON POU YO PATISIPE NAN PWOGRAM SA-A DWE, NAN YUN TAN REZONAB AVAN NINPOT ARANJMAN KAPAB FET, YO DWE KONTAKTE ADMINISTRATIVE OFFICE OF THE COURT, KI NAN NIMERO 205, NORTH DIXIE HIGHWAY, CHAM NIMERO 5.25, WEST PALM BEACH, FLORIDA 33401 TELEFON NAN SE 561-355-2431 OUBYEN 1-800-995-8771 (T.D.D.) OUBYEN 1-800-995-8770 (V) AN PASAN PA FLORIDA RELAY SERVICE.

*"DE ACUERDO CON EL ACTO O DECRETO DE LOS AMERICANOS CON IMPEDIMENTOS, INHABILITADOS, PERSONAS EN NECESIDAD DEL SERVICIO ESPECIAL PARA PARTICIPAR EN ESTE PROCEDIMENTIENTO DEBERAN, DENTRO DE UN TIEMPO RAZONABLE, ANTES DE CUALQUIER PROCEDIMIENTO, PONERSE EN CONTACTO CON LA OFICINA ADMINISTRATIVE DE LA CORTE, 205 NORTH DIXIE HIGHWAY, OFICINA 5.25, WEST PALM BEACH, FLORIDA 33401, TELEFONE (561) 344-2431, 1-800-955-8771 (TDD), O 1-800-955-8770 (V), VIA FLORIDA RELAY SERVICE".

"EN ACCORDANCE AVEC LA LOI DES "AMERICANS WITH DISABILITIES". LES PERSONNES EN BESOIN D'UNE ACCOMMODATION SPECIALE POUR PARTICIPER A CES PROCEDURES DOIVENT, DANS UN TEMPS RAISONABLE, AVANT D'ENTREPRENDRE AUCUNE AUTRE DEMARCHE, CONTACTER L'OFFICE ADMINISTRATIVE DE LA COURT, 205 NORTH DIXIE HWY, SITUE AU 5.25, WEST PALM BEACH, FORIDA 33401 LE TELEPHONE (561) 355-2431 OU 1-800-955-8771 (TDD) OU 1-800-955-8770 (V) VIA FLORIDA RELAY SERVICE".

IN THE CIRCUIT COURT « 11» IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.
Florida Bar #709670

JAMES RIVER INSURANCE COMPANY,

        Plaintiff,

vs.                                  COMPLAINT

SA-TECH ENGINEERING, INC.,

        Defendant.

_____/

    The Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through its undersigned attorneys, hereby sues the Defendant, SA-TECH ENGINEERING, INC., and alleges:

    1.     That this is an action for damages over $15,000.00.

    2.     That at all times material to this action the Defendant was and is a Florida corporation organized and existing under the laws of the State of Florida, doing business as SA-TECH ENGINEERING, INC., with its principal place of business in PALM BEACH County, Florida.

### COUNT I - OPEN ACCOUNT

    The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

    3.     That the Defendant owes the Plaintiff $46,865.00 that is due with interest since JUNE 21, 2008 for insurance coverage provided by the Plaintiff for the Defendant from , according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

    WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

### COUNT II - ACCOUNT STATED

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

4.    That before the institution of this action, the Plaintiff and the Defendant had business transactions between them and on or about JUNE 21, 2008 they agreed to the resulting balance.

5.    That the Plaintiff rendered the statement of account to the Defendant and the Defendant did not object to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

6.    That the Defendant owes the Plaintiff $46,865.00, that is due with interest since JUNE 21, 2008 according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

### COUNT III - BREACH OF INSURANCE CONTRACT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

7.    That on or about , the parties entered into an agreement whereby the Plaintiff agreed to provide insurance to Defendant and Defendant agreed to pay the premiums to provide said coverage.

8.    That pursuant to the agreement of the parties, the Plaintiff did issue an insurance policy, for a policy period beginning JUNE 1, 2006, a copy of which is attached hereto and made a part hereof as Plaintiff's Exhibit "B".

9.    That the Plaintiff has suffered damages in the sum of $46,865.00 as a result of the Defendant's failure to pay premiums more specifically set forth in Exhibit "B" attached hereto.

10.    That Plaintiff has performed all conditions precedent to this action.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

> THOMAS J. MACCARI, P.A.
> Attorney for Plaintiff
> 7700 Congress Avenue, Suite 1133
> Boca Raton, Florida  33487
> Telephone:(561) 982-9772
> Florida Bar #709670
>
> By:_____
>          THOMAS J. MACCARI

Statement of Account
James River Insurance Company
vs.
SA Tech Engineering Inc
RMS File 3344/8559

| Claim Number | Invoice Date | Invoice Number | Amount Due | Payment Received by JRIC | Date Received | Payment Received by RMS | Date Received | Balance |
|---|---|---|---|---|---|---|---|---|
| 00005530 | 5/21/2008 | R10278 | $23,927.51 | $727.51 | 6/2/2008 | | | |
| 00005038 | 10/6/2009 | R10629 | $21,747.50 | | | | | |
| | 10/23/2008 | R10689 | $2,417.50 | | | $500.00 | 4/9/2009 | $22,700.00 |
| | | | | | | | | $24,165.00 |
| | | | | | | | | $46,865.00 |

**EXHIBIT A**



**JAMES RIVER GROUP**

August 22, 2007

SA Tech Engineering Inc.
Attn: Yonah Saddick
123 North West 13th Street #309
Boca Raton, FL 33432

RE:     **Acknowledgement**
**Insured:**              **SA Tech Engineering Inc.**
**Project:**              **Isle of Capri**
**Policy No.:**           **00004772**
**Effective:**            **06/01/2007 - 06/01/2008**
**Retroactive:**          **05/11/1994**
**Limits:**               **$1,000,000.00/$1,000,000.00**
**Deductible:**           **$25,000.00**
**Claimant:**             **Shoemaker Construction Co.**
**Date of Loss:**         **08/14/2007**
**Date of Occurrence:** **02/15/2006 (please specify)**
**Claim File No.:**       **00005530**

Dear Mr. Saddick:

This will serve to acknowledge receipt by James River Insurance Company of the
potential claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number
**00004772**, which is an Architects & Engineers Professional Liability Insurance Policy,
Claims Made, with effective dates of 06/01/2007 - 06/01/2008, a retroactive date of
05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate
with a $25,000.00 deductible that applies to both indemnity and claims expense
payments.

As you had advised, Sa Tech was hired by the owner/developer, Isle of Capri, to act as
structural engineer. This is a two-tower condominium project located in Philadelphia, PA.
Cracking was encountered during the course of construction on the floors in the second
bay. This cracking occurred as a direct result of failure by the general contractor to
properly shore and re-shore each floor.

Your firm was consulted to examine the cracks, determine the cause and the remediation
required. It was determined that the cracks were small enough to be filled with epoxy. As

**EXHIBIT B**

a result, the owner/developer did not make the last two payments to the general contractor, so the general contractor sued the owner/developer for $6 Million dollars. In turn, the owner/developer sued the general contractor for $20 Million dollars for delay of the project. As you had advised, each of the towers was designed perfectly and the cracking did not occur as a result of any design defect.

We have hired the following law firm to assess the Writ and to provide input as to the most cost effective means of protecting you concerning this matter:

**Marshall, Dennehey, Warner,**
**Coleman & Goggin**
**Attn: Jonathan Weiss**
**1845 Walnut Street**
**Philadelphia, PA 19103**
**(215) 575-2599 (phone)**
**(215) 575-0856 (fax)**
**JDWeiss@MDWCG.com**

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well.**

In the event that a law suit or other formal demand letter is presented, please notify James River Insurance Company at once.

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative



**JAMES RIVER GROUP**

July 13, 2007

## THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY WILL FOLLOW.

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:   **Acknowledgement**

| | |
|---|---|
| **Insured:** | **SA Tech Engineering Inc** |
| **Project:** | **Vue Condominium** |
| **Policy No.:** | **00004772** |
| **Effective:** | **06/01/2006 - 06/01/2007** |
| **Retroactive:** | **05/11/1994** |
| **Limits:** | **$1,000,000.00/$1,000,000.00** |
| **Deductible:** | **$25000.00 Applicable to defense and indemnity** |
| **Claimant:** | **Vue Condominium Developer/Throgmorton** |
| **Date of Loss:** | **05/31/2007** |
| **Date of Occurrence:** | **06/15/2004** |
| **Claim File No.:** | **00005038** |

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772**, which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim, Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN
ATTN: RICHARD DANIELS
3300 PONCE DE LEON BOULEVARD
CORAL GABLES, FL 33134
305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com



# JAMES RIVER
## GROUP

July 13, 2007

**THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY
WILL FOLLOW.**

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:   **Acknowledgement**
      **Insured:**        **SA Tech Engineering Inc**
      **Project:**        **Vue Condominium**
      **Policy No.:**        **00004772**
      **Effective:**        **06/01/2006 - 06/01/2007**
      **Retroactive:**        **05/11/1994**
      **Limits:**        **$1,000,000.00/$1,000,000.00**
      **Deductible:**        **$25000.00 Applicable to defense and indemnity**
      **Claimant:**        **Vue Condominium Developer/Throgmorton**
      **Date of Loss:**        **05/31/2007**
      **Date of Occurrence: 06/15/2004**
      **Claim File No.:**        **00005038**

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim
involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number
**00004772,** which is an Architects & Engineers Professional Liability Insurance Policy,
Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of
05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate
with a $25,000.00 deductible that applies to both indemnity and claims expense
payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by
Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim,
Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services
in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN**
**ATTN: RICHARD DANIELS**
**3300 PONCE DE LEON BOULEVARD**
**CORAL GABLES, FL 33134**
**305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO. **50 2009 CA U 4 0 8 2 5 XXXXHF**
Florida Bar No.: 709670

COPY
RECEIVED FOR FILING

DEC 0 2 2009

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

JAMES RIVER INSURANCE COMPANY,

       Plaintiff,

vs.

SA-TECH ENGINEERING, INC.,

       Defendant.
_____/

SUMMONS

COPY
RECEIVED FOR FILING

NOV 1 8 2009

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

THE STATE OF FLORIDA:

    To All and Singular the Sheriffs of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant, SA-TECH ENGINEERING, INC., by serving:

             **YONAH SADDICK, R.A.**
      **Or any other officer, director or managing agent at:**
             **9989 Marsala Way**
           **Delray Beach, FL  33446**

    Each Defendant is required to serve written defenses to the Complaint or Petition on THOMAS J. MACCARI, ESQ., Plaintiff's attorney, whose address is:  THOMAS J. MACCARI, P.A., 7700 Congress Avenue, Suite 1133, Boca Raton, FL  33487, within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DEC 0 8 2009

    WITNESS my hand and seal of this Court on _____.    Copy

                  Sharon R. Bock
                  As Clerk and Comptroller

                  As Deputy Clerk

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

*"IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, PERSONS IN NEED OF A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHALL, WITHIN A REASONABLE TIME PRIOR TO ANY PROCEEDING, CONTACT THE ADMINISTRATIVE OFFICE OF THE COURT, 205 NORTH DIXIE HIGHWAY, ROOM 5.25, WEST PALM BEACH, FLORIDA 33401, TELEPHONE (561) 355-2431, 1-800-955-8771 (TDD), OR 1-800-955-8770 (V), VIA FLORIDA RELAY SERVICE".

" DAPRE AKO KI FET AVEK AMERICANS WITH DISABILILTIES ACT, TOUT MOUN KI GINYIN YUN BEZWEN ESPESIYAL POU AKOMODASIYON POU YO PATISIPE NAN PWOGRAM SA-A DWE, NAN YUN TAN REZONAB AVAN NINPOT ARANJMAN KAPAB FET, YO DWE KONTAKTE ADMINISTRATIVE OFFICE OF THE COURT, KI NAN NIMERO 205, NORTH DIXIE HIGHWAY, CHAM NIMERO 5.25, WEST PALM BEACH, FLORIDA 33401 TELEFON NAN SE 561-355-2431 OUBYEN 1-800-995-8771 (T.D.D.) OUBYEN 1-800-995-8770 (V) AN PASAN PA FLORIDA RELAY SERVICE.

*"DE ACUERDO CON EL ACTO O DECRETO DE LOS AMERICANOS CON IMPEDIMENTOS, INHABILITADOS, PERSONAS EN NECESIDAD DEL SERVICIO ESPECIAL PARA PARTICIPAR EN ESTE PROCEDIMENTIENTO DEBERAN, DENTRO DE UN TIEMPO RAZONABLE, ANTES DE CUALQUIER PROCEDIMIENTO, PONERSE EN CONTACTO CON LA OFICINA ADMINISTRATIVE DE LA CORTE, 205 NORTH DIXIE HIGHWAY, OFICINA 5.25, WEST PALM BEACH, FLORIDA 33401, TELEFONE (561) 344-2431, 1-800-955-8771 (TDD), O 1-800-955-8770 (V), VIA FLORIDA RELAY SERVICE".

"EN ACCORDANCE AVEC LA LOI DES "AMERICANS WITH DISABILITIES". LES PERSONNES EN BESOIN D'UNE ACCOMMODATION SPECIALE POUR PARTICIPER A CES PROCEDURES DOIVENT, DANS UN TEMPS RAISONABLE, AVANT D'ENTREPRENDRE AUCUNE AUTRE DEMARCHE, CONTACTER L'OFFICE ADMINISTRATIVE DE LA COURT, 205 NORTH DIXIE HWY, SITUE AU 5.25, WEST PALM BEACH, FORIDA 33401 LE TELEPHONE (561) 355-2431 OU 1-800-955-8771 (TDD) OU 1-800-955-8770 (V) VIA FLORIDA RELAY SERVICE".

IN THE CIRCUIT COURT « 11» IN AND
FOR PALM BEACH COUNTY, FLORIDA
CASE NO. **50 2009 CA 04082 5 XXXXXX**
Florida Bar #709670

JAMES RIVER INSURANCE COMPANY,

        Plaintiff,

vs.

SA-TECH ENGINEERING, INC.,

        Defendant.

_____/

COMPLAINT      **COPY**
RECEIVED FOR FILING

DEC 02 2009

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

The Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through its undersigned attorneys, hereby sues the Defendant, SA-TECH ENGINEERING, INC., and alleges:

1.    That this is an action for damages over $15,000.00.

2.    That at all times material to this action the Defendant was and is a Florida corporation organized and existing under the laws of the State of Florida, doing business as SA-TECH ENGINEERING, INC., with its principal place of business in PALM BEACH County, Florida.

## COUNT I - OPEN ACCOUNT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

3.    That the Defendant owes the Plaintiff $46,865.00 that is due with interest since JUNE 21, 2008 for insurance coverage provided by the Plaintiff for the Defendant from , according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT II - ACCOUNT STATED

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

4.      That before the institution of this action, the Plaintiff and the Defendant had business transactions between them and on or about JUNE 21, 2008 they agreed to the resulting balance.

5.      That the Plaintiff rendered the statement of account to the Defendant and the Defendant did not object to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

6.      That the Defendant owes the Plaintiff $46,865.00, that is due with interest since JUNE 21, 2008 according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT III - BREACH OF INSURANCE CONTRACT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

7.      That on or about , the parties entered into an agreement whereby the Plaintiff agreed to provide insurance to Defendant and Defendant agreed to pay the premiums to provide said coverage.

8.      That pursuant to the agreement of the parties, the Plaintiff did issue an insurance policy, for a policy period beginning JUNE 1, 2006, a copy of which is attached hereto and made a part hereof as Plaintiff's Exhibit "B".

9.      That the Plaintiff has suffered damages in the sum of $46,865.00 as a result of the Defendant's failure to pay premiums more specifically set forth in Exhibit "B" attached hereto.

10.     That Plaintiff has performed all conditions precedent to this action.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

> THOMAS J. MACCARI, P.A.
> Attorney for Plaintiff
> 7700 Congress Avenue, Suite 1133
> Boca Raton, Florida  33487
> Telephone:(561) 982-9772
> Florida Bar #709670
>
> By:
>         THOMAS J. MACCARI



## JAMES RIVER GROUP

August 22, 2007

SA Tech Engineering Inc.
Attn: Yonah Saddick
123 North West 13th Street #309
Boca Raton, FL 33432

RE:   **<u>Acknowledgement</u>**

| | |
|---|---|
| **Insured:** | **SA Tech Engineering Inc.** |
| **Project:** | **Isle of Capri** |
| **Policy No.:** | 00004772 |
| **Effective:** | 06/01/2007 - 06/01/2008 |
| **Retroactive:** | 05/11/1994 |
| **Limits:** | $1,000,000.00/$1,000,000.00 |
| **Deductible:** | $25,000.00 |
| **Claimant:** | Shoemaker Construction Co. |
| **Date of Loss:** | 08/14/2007 |
| **Date of Occurrence:** | 02/15/2006 (please specify) |
| **Claim File No.:** | 00005530 |

Dear Mr. Saddick:

This will serve to acknowledge receipt by James River Insurance Company of the potential claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772**, which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2007 - 06/01/2008, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

As you had advised, Sa Tech was hired by the owner/developer, Isle of Capri, to act as structural engineer. This is a two-tower condominium project located in Philadelphia, PA. Cracking was encountered during the course of construction on the floors in the second bay. This cracking occurred as a direct result of failure by the general contractor to properly shore and re-shore each floor.

Your firm was consulted to examine the cracks, determine the cause and the remediation required. It was determined that the cracks were small enough to be filled with epoxy. As

a result, the owner/developer did not make the last two payments to the general contractor, so the general contractor sued the owner/developer for $6 Million dollars. In turn, the owner/developer sued the general contractor for $20 Million dollars for delay of the project. As you had advised, each of the towers was designed perfectly and the cracking did not occur as a result of any design defect.

We have hired the following law firm to assess the Writ and to provide input as to the most cost effective means of protecting you concerning this matter:

**Marshall, Dennehey, Warner,**
**Coleman & Goggin**
**Attn: Jonathan Weiss**
**1845 Walnut Street**
**Philadelphia, PA 19103**
**(215) 575-2599 (phone)**
**(215) 575-0856 (fax)**
**JDWeiss@MDWCG.com**

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well.**

In the event that a law suit or other formal demand letter is presented, please notify James River Insurance Company at once.

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative



# JAMES RIVER GROUP

July 13, 2007

### THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY WILL FOLLOW.

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:    **Acknowledgement**

| | |
|---|---|
| **Insured:** | **SA Tech Engineering Inc** |
| **Project:** | **Vue Condominium** |
| **Policy No.:** | **00004772** |
| **Effective:** | **06/01/2006 - 06/01/2007** |
| **Retroactive:** | **05/11/1994** |
| **Limits:** | **$1,000,000.00/$1,000,000.00** |
| **Deductible:** | **$25000.00 Applicable to defense and indemnity** |
| **Claimant:** | **Vue Condominium Developer/Throgmorton** |
| **Date of Loss:** | **05/31/2007** |
| **Date of Occurrence:** | **06/15/2004** |
| **Claim File No.:** | **00005038** |

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772,** which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim, Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN
ATTN: RICHARD DANIELS
3300 PONCE DE LEON BOULEVARD
CORAL GABLES, FL 33134
305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com



## JAMES RIVER GROUP

July 13, 2007

### THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY WILL FOLLOW.

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:   <u>Acknowledgement</u>
Insured:                        SA Tech Engineering Inc
Project:                        Vue Condominium
Policy No.:                     00004772
Effective:                      06/01/2006 - 06/01/2007
Retroactive:                    05/11/1994
Limits:                         $1,000,000.00/$1,000,000.00
Deductible:                     $25000.00 Applicable to defense and indemnity
Claimant:                       Vue Condominium Developer/Throgmorton
Date of Loss:                   05/31/2007
Date of Occurrence: 06/15/2004
Claim File No.:                 00005038

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772**, which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim, Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN**
**ATTN: RICHARD DANIELS**
**3300 PONCE DE LEON BOULEVARD**
**CORAL GABLES, FL 33134**
**305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com

```
                                                    Page:            1

                D U P L I C A T E   R E C E I P T
                ----------------------------------

                              PALM BEACH CTY CIR CT JISPROD

                                    Receipt Number:    CAMB363477
                                              Date:  08-DEC-2009
                                           Cashier:    KBUTLER

Payor: thomas j maccari pa
Addr:

Violation/Docket            Description                        Amount
-----------------   --------------------------------------    --------
Case: 2009CA040825 - JAMES RIVER INSURANCE V SA-TECH ENG
Party: JAMES RIVER INSURANCE COMPANY
CAFF                                                           401.00
CAFF                                                            10.00

                    CHECK RECEIVED GENERAL ACCT                -411.00

                                     Total Fees:               411.00

                                  Total Payment:               411.00
```

IN THE CIRCUIT COURT « 11» IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.
Florida Bar #709670

JAMES RIVER INSURANCE COMPANY,

     Plaintiff,

vs.                               COMPLAINT

SA-TECH ENGINEERING, INC.,

     Defendant.

_____/

The Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through its undersigned attorneys, hereby sues the Defendant, SA-TECH ENGINEERING, INC., and alleges:

1.     That this is an action for damages over $15,000.00.

2.     That at all times material to this action the Defendant was and is a Florida corporation organized and existing under the laws of the State of Florida, doing business as SA-TECH ENGINEERING, INC., with its principal place of business in PALM BEACH County, Florida.

## COUNT I - OPEN ACCOUNT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

3.     That the Defendant owes the Plaintiff $46,865.00 that is due with interest since JUNE 21, 2008 for insurance coverage provided by the Plaintiff for the Defendant from , according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT II - ACCOUNT STATED

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

4.      That before the institution of this action, the Plaintiff and the Defendant had business transactions between them and on or about JUNE 21, 2008 they agreed to the resulting balance.

5.      That the Plaintiff rendered the statement of account to the Defendant and the Defendant did not raise a reasonable objection to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

6.      That the Defendant owes the Plaintiff $46,865.00, that is due with interest since JUNE 21, 2008 according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT III - BREACH OF INSURANCE CONTRACT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

7.      That on or about , the parties entered into an agreement whereby the Plaintiff agreed to provide insurance to Defendant and Defendant agreed to pay the premiums to provide said coverage.

8.      That pursuant to the agreement of the parties, the Plaintiff did issue an insurance policy, for a policy period beginning JUNE 1, 2006, a copy of which is attached hereto and made a part hereof as Plaintiff's Exhibit "B".

9.      That the Plaintiff has suffered damages in the sum of $46,865.00 as a result of the Defendant's failure to pay expenses and indemnity payments made up to the $25,000.00 per claim

IN THE CIRCUIT COURT « 11» IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.
Florida Bar #709670

JAMES RIVER INSURANCE COMPANY,

        Plaintiff,

vs.                                  COMPLAINT

SA-TECH ENGINEERING, INC.,

        Defendant.

_____/

    The Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through its undersigned attorneys, hereby sues the Defendant, SA-TECH ENGINEERING, INC., and alleges:

    1.     That this is an action for damages over $15,000.00.

    2.     That at all times material to this action the Defendant was and is a Florida corporation organized and existing under the laws of the State of Florida, doing business as SA-TECH ENGINEERING, INC., with its principal place of business in PALM BEACH County, Florida.

## COUNT I - OPEN ACCOUNT

    The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

    3.     That the Defendant owes the Plaintiff $46,865.00 that is due with interest since JUNE 21, 2008 for insurance coverage provided by the Plaintiff for the Defendant from , according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

    WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT II - ACCOUNT STATED

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

4.      That before the institution of this action, the Plaintiff and the Defendant had business transactions between them and on or about JUNE 21, 2008 they agreed to the resulting balance.

5.      That the Plaintiff rendered the statement of account to the Defendant and the Defendant did not object to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

6.      That the Defendant owes the Plaintiff $46,865.00, that is due with interest since JUNE 21, 2008 according to the statement of account attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

### COUNT III - BREACH OF INSURANCE CONTRACT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

7.      That on or about , the parties entered into an agreement whereby the Plaintiff agreed to provide insurance to Defendant and Defendant agreed to pay the premiums to provide said coverage.

8.      That pursuant to the agreement of the parties, the Plaintiff did issue an insurance policy, for a policy period beginning JUNE 1, 2006, a copy of which is attached hereto and made a part hereof as Plaintiff's Exhibit "B".

9.      That the Plaintiff has suffered damages in the sum of $46,865.00 as a result of the Defendant's failure to pay premiums more specifically set forth in Exhibit "B" attached hereto.

2

10.     That Plaintiff has performed all conditions precedent to this action.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

THOMAS J. MACCARI, P.A.
Attorney for Plaintiff
7700 Congress Avenue, Suite 1133
Boca Raton, Florida  33487
Telephone:(561) 982-9772
Florida Bar #709670

By:_____
        THOMAS J. MACCARI

3

# THOMAS J. MACCARI, P.A.

Attorney At Law

7700 Congress Avenue, Suite 1133
Boca Raton, Florida 33487
Telephone: (561) 982-9772
Facsimile: (561) 982-9462
tmaccari@tjmpa.com
www.tjmpa.com

March 11, 2010

Hinshaw & Culbertson LLP
Attn: Eric A. Hiller
9155 South Dadeland Blvd., Suite 1600
Miami, FL 33156

RE:    James River Insurance Company vs. SA Tech Engineering, Inc.
       Case No. 50 2009 CA 040825 XXXXMB

Dear Eric,

Enclosed please find correspondence I have sent to the attorney for the defendant confirming an extension. Additionally, enclosed please find copies of all relevant pleadings that have been filed to date.

Accordingly, please prepare a Stipulation for Substitution of Counsel and forward it to my office as soon as possible. Please contact me if you have any questions.

Very truly yours,

Thomas J. Maccari
TJM/ss/enc.

Statement of Account
James River Insurance Company
vs.
SA Tech Engineering Inc
RMS File 334478559

| Claim Number | Invoice Date | Invoice Number | Amount Due | Payment Received by JRIC | Date Received | Payment Received by RMS | Date Received | Balance |
|---|---|---|---|---|---|---|---|---|
| 00005530 | 5/21/2008 | R10278 | $23,927.51 | $727.51 | 6/2/2008 | | | |
| 00005038 | 10/6/2009 | R10629 | $21,747.50 | | | $500.00 | 4/9/2009 | $22,700.00 |
| | 10/23/2008 | R10689 | $2,417.50 | | | | | $24,165.00 |
| | | | | | | | | $46,865.00 |

EXHIBIT A

Statement of Account
James River Insurance Company
vs.
SA Tech Engineering Inc
RMS File 33447859

| Claim Number | Invoice Date | Invoice Number | Amount Due | Payment Received by JRIC | Date Received | Payment Received by RMS | Date Received | Balance |
|---|---|---|---|---|---|---|---|---|
| 00005530 | 5/21/2008 | R10278 | $23,927.51 | $727.51 | 6/2/2008 | | | |
| 00005038 | 10/6/2009 | R10629 | $21,747.50 | | | $500.00 | 4/9/2009 | $22,700.00 |
| | 10/23/2008 | R10689 | $2,417.50 | | | | | $24,165.00 |
| | | | | | | | | $46,865.00 |

**EXHIBIT A**



**JAMES RIVER**
**GROUP**

August 22, 2007

SA Tech Engineering Inc.
Attn: Yonah Saddick
123 North West 13th Street #309
Boca Raton, FL  33432

RE:   **Acknowledgement**
      **Insured:**            **SA Tech Engineering Inc.**
      **Project:**            **Isle of Capri**
      **Policy No.:**         **00004772**
      **Effective:**          **06/01/2007 - 06/01/2008**
      **Retroactive:**        **05/11/1994**
      **Limits:**             **$1,000,000.00/$1,000,000.00**
      **Deductible:**         **$25,000.00**
      **Claimant:**           **Shoemaker Construction Co.**
      **Date of Loss:**       **08/14/2007**
      **Date of Occurrence: 02/15/2006 (please specify)**
      **Claim File No.:**     **00005530**

Dear Mr. Saddick:

This will serve to acknowledge receipt by James River Insurance Company of the
potential claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number
**00004772**, which is an Architects & Engineers Professional Liability Insurance Policy,
Claims Made, with effective dates of 06/01/2007 - 06/01/2008, a retroactive date of
05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate
with a $25,000.00 deductible that applies to both indemnity and claims expense
payments.

As you had advised, Sa Tech was hired by the owner/developer, Isle of Capri, to act as
structural engineer. This is a two-tower condominium project located in Philadelphia, PA.
Cracking was encountered during the course of construction on the floors in the second
bay. This cracking occurred as a direct result of failure by the general contractor to
properly shore and re-shore each floor.

Your firm was consulted to examine the cracks, determine the cause and the remediation
required. It was determined that the cracks were small enough to be filled with epoxy. As

a result, the owner/developer did not make the last two payments to the general contractor, so the general contractor sued the owner/developer for $6 Million dollars. In turn, the owner/developer sued the general contractor for $20 Million dollars for delay of the project. As you had advised, each of the towers was designed perfectly and the cracking did not occur as a result of any design defect.

We have hired the following law firm to assess the Writ and to provide input as to the most cost effective means of protecting you concerning this matter:

**Marshall, Dennehey, Warner,**
**Coleman & Goggin**
**Attn: Jonathan Weiss**
**1845 Walnut Street**
**Philadelphia, PA 19103**
**(215) 575-2599 (phone)**
**(215) 575-0856 (fax)**
**JDWeiss@MDWCG.com**

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well.**

In the event that a law suit or other formal demand letter is presented, please notify James River Insurance Company at once.

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative



## JAMES RIVER GROUP

July 13, 2007

### THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY WILL FOLLOW.

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:   **Acknowledgement**

| | |
|---|---|
| **Insured:** | **SA Tech Engineering Inc** |
| **Project:** | **Vue Condominium** |
| **Policy No.:** | **00004772** |
| **Effective:** | **06/01/2006 - 06/01/2007** |
| **Retroactive:** | **05/11/1994** |
| **Limits:** | **$1,000,000.00/$1,000,000.00** |
| **Deductible:** | **$25000.00 Applicable to defense and indemnity** |
| **Claimant:** | **Vue Condominium Developer/Throgmorton** |
| **Date of Loss:** | **05/31/2007** |
| **Date of Occurrence:** | **06/15/2004** |
| **Claim File No.:** | **00005038** |

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772**, which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim, Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN**
**ATTN: RICHARD DANIELS**
**3300 PONCE DE LEON BOULEVARD**
**CORAL GABLES, FL 33134**
**305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com



### JAMES RIVER
### GROUP

July 13, 2007

### THIS DOCUMENT HAS BEEN SENT VIA E-MAIL ONLY. NO HARD COPY WILL FOLLOW.

SA Tech Engineering Inc.
Attn: Mr. Yonah Saddik, P.E.
123 North West 13th Street #309
Boca Raton, FL  33432

sateng10@aol.com

RE:    **Acknowledgement**
   **Insured:**    **SA Tech Engineering Inc**
   **Project:**    **Vue Condominium**
   **Policy No.:**   **00004772**
   **Effective:**   **06/01/2006 - 06/01/2007**
   **Retroactive:**  **05/11/1994**
   **Limits:**    **$1,000,000.00/$1,000,000.00**
   **Deductible:**  **$25000.00 Applicable to defense and indemnity**
   **Claimant:**   **Vue Condominium Developer/Throgmorton**
   **Date of Loss:**  **05/31/2007**
   **Date of Occurrence: 06/15/2004**
   **Claim File No.:**  **00005038**

Dear Mr. Saddik:

This will serve to acknowledge receipt by James River Insurance Company of the claim involving the above captioned claimant.

This claim was reported to James River Insurance Company under Policy Number **00004772**, which is an Architects & Engineers Professional Liability Insurance Policy, Claims Made, with effective dates of 06/01/2006 - 06/01/2007, a retroactive date of 05/11/1994 and limits of $1,000,000.00 per claim and $1,000,000.00 in the aggregate with a $25,000.00 deductible that applies to both indemnity and claims expense payments.

On June 26th, 2007, we received suit papers which comprised of a counter claim filed by Throgmorton Company, *et al* against Sa-Tech Engineering, Inc. In their counter claim, Throgmorton is alleging that Sa-Tech, Inc. "breached its duty and performed its services in a negligent manner, as it designed a structure that was, as a practical matter, not

constructible and it failed to timely inform Defendants, directly or through an intermediary, of the problems with the design."

As you know by this point, we have hired the following law firm to defend you for this counter complaint:

**DANIELS, KASHTAN, DOWNS, ROBERTSON & MAGATHAN**
**ATTN: RICHARD DANIELS**
**3300 PONCE DE LEON BOULEVARD**
**CORAL GABLES, FL 33134**
**305-448-7988**

Based on my conversation with Richard, you have conveyed that this tunnel system for this project was, in fact, able to be constructed.

**Please send me a copy of your entire project file so I may review coverage, liability and damages for this matter. Please include all electronic communications as well. Although I have already received some documents from Mr. Daniels, it is still important and required that you please send me the aforementioned documentation.**

We take this opportunity to remind you that as expenses and losses are subject to the policy deductible. Expenses and/or possible loss payments up to the amount of your deductible of $25,000.00 will be passed along to your firm for reimbursement to James River Insurance Company.

If you have any questions or wish to discuss any of the above, please do not hesitate to contact me at Tel (804) 289-2107, Fax # (804) 287-2800 or via Email: Phil.Wise@jamesriverins.com

Sincerely,

Phil Wise
Senior Claims Representative

CC:

Rdaniels@dkdr.com

Lisa.Hepp@insmac.com

rconnor@Suncoastins.com

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 502009CA040825XXXXMB AJ
Florida Bar #709670

JAMES RIVER INSURANCE COMPANY,

       Plaintiff,

vs.                                    AMENDED COMPLAINT

SA-TECH ENGINEERING, INC.,

       Defendant.
_____/

The Plaintiff, JAMES RIVER INSURANCE COMPANY, by and through its undersigned attorneys, hereby sues the Defendant, SA-TECH ENGINEERING, INC., and alleges:

1.    That this is an action for damages over $15,000.00.

2.    That at all times material to this action the Defendant was and is a Florida corporation organized and existing under the laws of the State of Florida, doing business as SA-TECH ENGINEERING, INC., with its principal place of business in PALM BEACH County, Florida.

### COUNT I - OPEN ACCOUNT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

3.    That the Defendant owes the Plaintiff $46,865.00 that is due with interest since JUNE 21, 2008 for insurance coverage provided by the Plaintiff for the Defendant from , according to the statement of account and invoices attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT II - ACCOUNT STATED

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

4.       That before the institution of this action, the Plaintiff and the Defendant had business transactions between them and on or about JUNE 21, 2008 they agreed to the resulting balance.

5.       That the Plaintiff rendered the statement of account to the Defendant and the Defendant did not raise a reasonable objection to the statement of account and invoices attached hereto and made a part hereof as Plaintiff's Exhibit "A".

6.       That the Defendant owes the Plaintiff $46,865.00, that is due with interest since JUNE 21, 2008 according to the statement of account and invoices attached hereto and made a part hereof as Plaintiff's Exhibit "A".

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

## COUNT III - BREACH OF INSURANCE CONTRACT

The Plaintiff readopts and realleges paragraphs 1 and 2 above and further states:

7.       That on or about JUNE 1, 2006, the parties entered into an agreement whereby the Plaintiff agreed to provide professional liability insurance to Defendant and Defendant agreed to pay the premiums to provide said coverage.

8.       That pursuant to the agreement of the parties, the Plaintiff did issue insurance policy #4772-2, for a policy period from JUNE 1, 2006 to JUNE 1, 2007, and policy #4772-3 for a policy period of JUNE 1, 2007 to JUNE 1, 2008, copies of which are attached hereto and made a part hereof as Plaintiff's Exhibit "B".

9.      That pursuant to the terms of the above referenced policies, Plaintiff paid claims on behalf of the Defendant for losses incurred on MAY 31, 2007 and AUGUST 14, 2007, totaling $48,092.51 as set forth on the invoices attached hereto as a part of Plaintiff's Exhibit "A",

10.     That the Defendant paid a total of $1,227.51 towards said invoices, leaving a balance of $46,865.00 more specifically set forth on the statement of account attached hereto as a part of Plaintiff's Exhibit "A".

11.     That the Plaintiff has suffered damages in the sum of $46,865.00 as a result of the Defendant's failure to pay the deductibles more specifically set forth in Exhibit "A" attached hereto.

12.     That Plaintiff has performed all conditions precedent to this action.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages in the amount of $46,865.00, interest, and court costs.

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Complaint has been furnished via mail to Robert J. Levine, Esquire, Attorney for Defendant, at LEVINE & PARTNERS, P.A., 1110 Brickell Ave., Suite 700, Miami, FL 33131, this _25th_ day of February, 2010.

THOMAS J. MACCARI, P.A.
Attorney for Plaintiff
7700 Congress Avenue, Suite 1133
Boca Raton, Florida 33487
Telephone:(561) 982-9772
Florida Bar #709670

By:_____
      THOMAS J. MACCARI

3

Statement of Account
James River Insurance Company
vs.
SA Tech Engineering Inc
RMS File 33447&559

| Claim Number | Invoice Date | Invoice Number | Amount Due | Payment Received by JRIC | Date Received | Payment Received by RMS | Date Received | Balance |
|---|---|---|---|---|---|---|---|---|
| 00005530 | 5/21/2008 | R10278 | $23,927.51 | $727.51 | 6/2/2008 | | | |
| 00005038 | 10/6/2009 | R10629 | $21,747.50 | | | | | |
| | 10/23/2008 | R10689 | $2,417.50 | | | $500.00 | 4/9/2009 | $22,700.00 |
| | | | | | | | | $24,165.00 |
| | | | | | | | | $46,865.00 |

EXHIBIT A

| INVOICE # | R10629 |
|---|---|

| File Number: | 00005038 |
|---|---|

Attention:   Mr. Yonah Saddik, P.E.
SA Tech Engineering Inc
123 North West 13th Street #309
Boca Raton, FL 33432

| Invoice Date: | 10/6/2008 |
|---|---|
| Due Date: | **11/5/2008** |

| Amount Due: | $21,747.50 |
|---|---|

| Date of Loss | Claimant | Deductible Amount |
|---|---|---|
| 5/31/2007 | Throgmorton | $21,747.50 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | **Total:** | $21,747.50 |

**Payment for the above listed items is due to James River Insurance on or before the due date shown above.**

Direct Inquiries To:
Alys Sellers
Underwriting Services - Team Leader

Phone:   (804) 289-2156
Fax:      (804) 287-2807

| INVOICE #  R10278 |
| :---: |

File Number:  00005530

Attention:

Mr. Yonah Saddick
SA Tech Engineering Inc
123 North West 13th Street #309
Boca Raton, FL  33432

Invoice Date:     5/21/2008

Due Date:     **6/21/2008**

| Amount Due: | $ | 23,927.51 |
| :---: | :--- | ---: |

| Date of Loss | Claimant | Deductible Amount |
| :---: | :---: | :---: |
| 8/14/2007 | Shoemaker Construction Co. | $23,927.51 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total: | $          23,927.51 |

**Payment for the above listed items is due to James River Insurance on or before the due date shown
above.**

Direct Inquiries To:     Alys Sellers
Underwriting Services - Team Leader

Phone:     (804) 289-2156
Fax:     (804) 287-2807

# ARCHITECTS AND ENGINEERS - PROFESSIONAL LIABILITY INSURANCE

## JAMES RIVER INSURANCE COMPANY
7130 Glen Forest Drive, Suite 210
Richmond, Virginia 23226-3754

# DECLARATIONS

POLICY NUMBER: 00004772-2

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS:
SA-Tech Engineering Inc
123 NW 13th Street # 309
Boca Raton, FL 33428

PRODUCER:     13218
Roehrig & MacDuff
111 2nd Avenue NE, Suite 610
Saint Petersburg, FL 33701

**THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF EXERCISED. THE PAYMENT OF CLAIM EXPENSES REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**ITEM 2.** POLICY PERIOD:                    From: 06/01/2006        To: 06/01/2007
12:01 A.M. Standard Time at your mailing address

**ITEM 3.** PROFESSIONAL SERVICES:  Structural Engineering Services

**ITEM 4.** LIMITS OF INSURANCE:

    A.  Each Claim Limit of Liability ................................................................$1,000,000
    B.  Annual Aggregate ...........................................................................$1,000,000

**ITEM 5.** RETROACTIVE DATE: 5/11/1994

**ITEM 6.** DEDUCTIBLE:     $25,000        each "Claim"

**ITEM 7.** PREMIUM: $20,465

**ITEM 8.** EXTENDED REPORTING PERIOD: <u>12</u> months at <u>100</u>% of the total annual premium.

**ITEM 9.** ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:
    See attached Schedule A – Schedule of Forms

# EXHIBIT 

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO. 00004772-2**

**FORM NUMBER**          **DESCRIPTION**

| Form Number | Description |
| --- | --- |
| PL0013US-0603 | Architects and Engineers Professional Liability Declarations |
| AP0001US-0403 | Schedule A |
| PL0005US-0603 | Architects and Engineers Professional Liability Policy |
| AP2103US-0504 | Minimum Policy Premium |
| AP0100US-0403 | Privacy Policy |
| AP1014US-1005 | Florida Policy Changes |
| AP2112US-0804 | Terrorism Exclusion |
| AP2113US-0703 | Service of Suit |
| IL0021-0702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| PL2101US-0603 | Combined General Endorsement |
| PL2109US-0603 | Prior and Pending Litigation Exclusion |
| PL2111US-0703 | Fungi or Bacteria Exclusion |
| PL2114US-0505 | Bodily Injury/Property Damage Limitation Endorsement |
| PL2118US-0903 | Awareness Provision |

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY
PLEASE READ CAREFULLY

THIS POLICY IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS AND PROVIDES PROFESSIONAL LIABILITY COVERAGE FOR THOSE CLAIMS THAT OCCUR SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THIS POLICY IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

## PROVISIONS

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION II - DEFINITIONS.

In consideration of payment of the premium, and in reliance upon the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, and subject to the Declarations and all the terms and conditions of this Policy, including any endorsement hereto, we agree with you as follows:

SECTION I - COVERAGES

1. **Insuring Agreement**

   a. We will pay on behalf of the "Insured" those sums in excess of the deductible that the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to us in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable. The "Wrongful Acts" must have been committed on or subsequent to the "Retroactive Date" specified in the Declarations and before the end of the "Policy Period".

   b. **Defense and Settlement**

   We shall have the right and duty to defend any covered "Claim" brought against the "Insured" even if the "Claim" is groundless, false or fraudulent. However, we will have no duty to defend the "Insured" against any "Claim" seeking "Damages" to which this insurance does not apply. The "Insured" shall not admit or assume liability or settle or negotiate to settle any "Claim" or incur any "Claims Expenses" without our prior written consent. We shall have the right to appoint counsel and to make any investigation and defend any "Claim" as we deem necessary.

   We shall not settle any "Claim" without the written consent of the "Named Insured". If the "Named Insured" refuses to consent to a settlement recommended by us and acceptable to the claimant, then our Limit of Liability under this Policy with respect to such "Claim", shall be reduced to the amount of "Damages" for which the "Claim" could have been settled plus any "Claims Expenses" incurred up to the time we made our recommendation to the "Named Insured". This amount shall not exceed the unexhausted Limit of Liability as specified in the Declarations.

We shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle any "Claim" after the applicable Limit of Liability specified in the Declarations has been exhausted by payment of "Damages" and "Claims Expenses" or any combination thereof. In such case, we shall have the right to withdraw from further investigation, defense, payment or settlement of such "Claim" by tendering control of such "Claim" to you.

"Claims Expenses" are a part of and not in addition to the Limit of Liability. The payment by us of "Claim Expenses" reduces the applicable Limit of Liability.

## SECTION II – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

A. "Bodily Injury" means injury to the body, sickness or disease, including death resulting from such injuries. "Bodily Injury" also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

B. "Claim" means a written demand for monetary damages arising out of or resulting from the performing or failure to perform "Professional Services".

C. "Claims Expenses" means:

  (1) attorneys' fees, expert witness fees and other reasonable fees and costs paid by us or by you with our prior written consent, in the investigation and defense of covered "Claims";

  (2) reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "Claim", including the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

  "Claims Expenses" does not include your employees wages or salaries or the costs of your directors, officers or employees.

  All "Claims Expenses" are a part of the Limit of Liability and Deductible and shall not be considered sums payable in addition thereto.

D. "Damages" means any compensatory amount which you become legally obligated to pay as a result of a covered "Claim", including judgments, awards and settlements.

  "Damages" shall not include:

  (1) civil or criminal fines, penalties, sanctions, whether pursuant to law, statute, regulation or court rule;

  (2) punitive and exemplary damages and the multiplied portion of multiplied damages:

  (3) any matter, sum or award that is uninsurable under the law; or

  (4) the cost to comply with an injunctive or other non-monetary or declaratory relief.

E. "Disciplinary Proceeding" means any proceeding by a regulatory or disciplinary official or agency to investigate charges made by a client or former client alleging professional misconduct in performing or failing to perform "Professional Services".

F. "Insured" means the "Named "Insured" and:

  (1) any past, present or future principal, partner, officer, director, stockholder, trustee or employee of the "Named Insured" but only with respect to "Professional Services" performed on behalf of the "Named Insured";

PL0005US 06-03                                                                                    2 of 8

    (2) independent contractors who are natural persons, or any temporary or leased personnel but only while acting under your direct supervision and on your behalf;

    (3) the estate, heirs, executors, administrators or legal representatives of any "Insured" described in subpart (1 or (2) above in the event of such "Insured's" death, incapacity, insolvency or bankruptcy but only to the extent that such "Insured" would otherwise be provided coverage under this Policy; or

    (4) Any "Subsidiary".

G. "Named Insured" means the entity or person named in the Declarations.

H. "Policy Period" means the period of time shown in the Declarations

I. "Professional Services" means those services which you are legally qualified to perform for others in your capacity as an architect, engineer, landscape architect, land surveyor or planner.

J. "Property Damage" means any injury to or loss or destruction of tangible property, including the loss of use thereof.

K. "Related Claims" means all "Claims" arising out of a single "Wrongful Act" or series of "Related Wrongful Acts" in the performance of or failure to perform "Professional Services".

L. "Related Wrongful Acts" means all "Wrongful Acts" that have as a common nexus any fact, circumstance, situation, event, transaction cause or series of casually connected facts, circumstances, situations, events, transactions or causes.

M. "Retroactive Date" means the date specified in the Declarations.

N. "Subsidiary" means any entity in which the "Named Insured" owns either directly or indirectly 50% or more of the outstanding voting stock.

O. "Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty in the performing of or failure to perform "Professional Services".


SECTION III - EXCLUSIONS

This Policy does not apply to any "Claim" against the "Insured":

a.    Based on or directly or indirectly arising out of:

    (1)    A "Professional Service" rendered prior to the effective date of the Policy if any "Insured" knew or could have reasonably foreseen that the "Professional Service" could give rise to a "Claim";

    (2)    Any common fact, circumstance, transaction advice or decision involved in a "Professional Service" reported as a "Claim" or potential "Claim" under any prior Policy; or

    (3)    Any "Claim", suit, act, error or omission disclosed in the application for this Policy.

b.    Based on or directly or indirectly arising from an "Insured's" "Professional Services" for:

    (1)    Any other "Insured" under the Policy;

    (2)    Any firm, organization, entity or trust not named in the Declarations in which the "Insured"

        (a)    has or had any ownership interest;

        (b)    is or was a director, officer, partner, principal shareholder or employee; or,

        (c)    at any time managed, operated or exercised direct or indirect control.

c.    Based on or directly or indirectly arising out of any actual or alleged liability assumed by you under any contract or agreement, unless such liability would have attached to you even in the absence of such contract.

d.    Based on or directly or indirectly arising out of any actual or alleged "Bodily Injury" or "Property Damage".

e.    Based upon or directly or indirectly arising out of any express warranty or guarantee.

f.    Based on or directly or indirectly arising out of or resulting from:

    (1)    Any act committed with knowledge of its wrongful nature or with the intent to cause damage; or,

    (2)    The gaining by the "Insured" of any personal profit, gain or advantage to which the "Insured" is not legally entitled; or

    (3)    Any disputes over fees for services; or,

    (4)    Any criminal, fraudulent, or dishonest act. However, we shall defend such allegations against the "Insured" if it involves a "Claim" otherwise covered under the Policy until final adjudication; or,

    (5)    Judgments or awards arising from acts or omissions deemed uninsurable by law.

g.    Based on or directly or indirectly arising out of or resulting from infringement of patent, copyright, trademark, service mark or trade name; or unfair competition based upon actual or alleged infringement of patent, copyright, trademark, service mark, or trade name.

h.    Based on directly or indirectly arising out of or resulting from any "Claim" based on the unauthorized access to the "Insured's electronic data processing system.

i.    Based on directly or indirectly arising out of any "Disciplinary Proceeding".

j.    Based on directly or indirectly arising out of or resulting from the design or manufacture of any goods or products which are sold or supplied by you or by others under license from you.

k.    Based on directly or indirectly arising out of or resulting from the cost to repair or replace faulty construction workmanship or materials in any construction, erection, fabrication, installation, assembly or manufacturing process if performed or provided by you, including materials, parts or equipment furnished in connection therewith.

l.    Relating in whole or in part to the dissolution of the firm.

SECTION IV – LIMIT OF LIABILITY

1.    Our maximum liability for all "Damages" and "Claims Expenses" resulting from each "Claim" covered under this Policy shall not exceed the amount stated in the Declarations as LIMIT OF LIABILITY – EACH "CLAIM".  Our maximum aggregate liability for all "Damages" and "Claims Expenses" resulting from all "Claims" covered by this Policy shall be the aggregate limit of liability stated in the Declarations as LIMIT OF LIABILITY – AGGREGATE.

2.    All "Claims" alleging, based upon, arising out of or attributable to the same "Wrongful Act" and "Related "Wrongful Acts" shall be deemed to be a single "Claim" regardless of whether made against one or more "Insured" and such "Claim" shall be deemed first made on the date the earliest of such "Claims" is first made even if such date is before the "Policy Period"

3.    The number of "Insureds" covered by the Policy shall not operate to increase the Limits of Liability.

4.    Two or more "Claims" or suits arising out of the same, related or continuous "Professional Services" shall be considered a single "Claim".

5.    If two or more Polices of insurance issued by us apply to the same "Claim" or "Claims" for which any "Insured" is legally liable, we shall not be liable under this Policy for more than the Limit of Liability of

that Policy issued by us which has the highest applicable Limit of Liability.  If the Limit of Liability on each Policy is the same, only one limit will apply.

## SECTION V – DEDUCTIBLE

We shall only be liable for those amounts payable as "Damages" and/or "Claims Expenses" which are in excess of the applicable deductible stated in the Declarations.  The "Deductible" shall apply separately to each "Claim" and shall be paid by you.  You shall promptly make direct payments within the deductible to the appropriate parties as designated by us.  We shall have no obligation to make payments within the deductible and then seek reimbursement from you.

## SECTION VI - TERRITORY

This Policy only applies to "Claims" which are brought in the United States, its territories or possessions, or Canada.

## SECTION VII – CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Policy.

2. Notice of "Claims"

   As a condition precedent to our obligations under this Policy, you shall give written notice to us as soon as practicable, but in no event later than 60 days after the end of the "Policy Period" of any "Claim" made against you.  You shall immediately forward to us every demand, notice, summons or other process or pleading received by you or your representative. You will not, except at your own cost, voluntarily make any payment, assume any obligation, or incur any expense.

3. Assistance and Cooperation

   You shall cooperate with us and provide us with all information and assistance which we reasonably request including without limitation attend hearings, depositions and trials and assisting in effecting settlements, securing and giving evidence and conducting the defense of any ""Claim"" covered by this Policy.  You shall do nothing that may prejudice our position.

4. Legal Action Against Us

   No person or organization has a right under this Policy to join us as a party or otherwise bring us into a suit asking for "Damages" from an "Insured".

   No action shall be brought against us, unless, as a condition precedent thereto, you shall have fully complied with all the terms of this Policy, and the amount of your obligation to pay shall have been fully determined either by judgment against you after actual trial and appeal or by written agreement between you, the claimant and us.

5. Other Insurance

   This Policy shall be excess over any other valid and collectible insurance, self-insurance or indemnification available to you, whether such other insurance or indemnification is stated to be primary, contributory, excess, contingent, self insurance or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy.

6. Representations

   By accepting this Policy, you agree:

PL0005US 06-03

    A.   The statements in the Declarations are accurate and complete;

    B.   Those statements are based upon representations you made to us; and

    C.   We have issued this Policy in reliance upon your representations.

7.    Subrogation

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery against any person or organization and you shall execute and deliver instruments and papers and whatever else is necessary to secure such rights. You must do nothing after a ""Claim"" is made to impair such rights.

8.    "Named "Insured"" as Sole Representative

The "Named Insured" shall act on behalf of all "Insureds" with respect to completing the Application for this insurance, including representing the truth and completeness of all information as required including providing Notice of "Claim" or Loss, giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Extended Reporting Period.

9.    Cancellation and Non-Renewal

    A.  The "Named Insured" shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

    B.  We may cancel this policy by mailing or delivering to the "Named Insured" written notice of cancellation at least:

        1.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        2.  30 days before the effective date of cancellation if we cancel for any other reason

    C.  We will mail or deliver our notice the "Named Insured's" last mailing address known to us.

    D.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

    E.  If this policy is cancelled, we will send the "Named Insured" any premium refund due.  If we cancel, the refund will be pro rata.  If the "Named Insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    F.  If notice is mailed, proof of mailing will be sufficient proof of notice.

If we elect not to renew this Policy for an additional "Policy Period", we shall mail written notice to the "Named Insured" at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the "Policy Period".

10.   Acquisitions, Mergers and Material Changes

In the event that after the inception date of this Policy you:

    A.  acquire all or substantially all of the assets of another entity; or,

    B.  merge with another entity such that you are the surviving entity; or,

    C.  create or acquire a subsidiary; or,

    D.  otherwise change your business as described in the application in a manner material to the risk underwritten by us,

then no coverage shall be afforded under this Policy for the assets acquired by you; the "Wrongful Acts" of the entity merged with, acquired by or created by you; or your changed business activities unless and until:

A.  you provide written notice of any of the above events to us not more than thirty (30) days after the effective date thereof; and,

B.  you provide us with such pertinent information that we may deem necessary; and,

C.  you accept any special terms, conditions, exclusions and pay any additional premium charge required; and,

D.  we, at our sole discretion, specifically agree in writing to provide such coverage.

Should we agree to provide coverage for the newly purchased or created entity or subsidiary, or for your changed business activities, such coverage will be only for ""Wrongful Acts" first committed following the date we agree to provide such coverage.

11. Assignment

Assignment of any interest by you under this Policy shall not bind us without our written consent.

## SECTION VIII – EXTENDED REPORTING PERIOD

In the event of cancellation or non renewal of this Policy, by either the "Named "Insured"" or the Company, for reasons other than non payment of premium or material misrepresentation in the Application, you shall have the right to an Extended Reporting Period as follows:

(a)     Automatic Extended Reporting Period

Coverage as provided under this Policy shall automatically continue for a period of sixty (60) days following the effective date of such cancellation or non renewal, but only with respect to "Claims" and "Wrongful Acts" committed before the effective date of such cancellation or no renewal.

(b)     Optional Extended Reporting Period

You shall have the right, upon payment of the additional premium set forth in the Declarations, to an extension of the coverage provided under this Policy for the term set forth in the Declarations following the effective date of such cancellation or non renewal, but only with respect to "Claims" for "Wrongful Acts" committed before the effective date of such cancellation or non renewal.

This right shall terminate, however, unless written notice of such election and payment of the additional premium is received by us not later than thirty (30) days after the effective date of such cancellation or non renewal.  A change in Policy terms and conditions and/or premium shall not be considered non renewal for purposes of triggering either Extended Reporting Period

The entire premium for the Extended Reporting Period shall deemed fully earned and non refundable.

The fact that the period during which "Claims" may be reported to us under this Policy is extended by virtue of the Automatic and Optional Extended Reporting Periods does not in any way increase the Limits of Liability of this Policy.

## SECTION IX – ARBITRATION

Should we disagree as to the rights and obligations owed by us under this Policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may request that the dispute be subjected to binding arbitration.

In the event that the parties cannot agree upon an arbitration forum and process, The American Arbitration Association shall be used, with each party selecting an arbitrator from the list of qualified arbitrators for insurance coverage disputes provided by that association.  The two chosen arbitrators shall select a third arbitrator from the same list; if they cannot agree to a selection, the American Arbitration Association shall make the selection for them.  Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and of the arbitration process.

In the event you prevail in the arbitration and we promptly offer to you arbitration costs and reasonable attorney's fees incurred in connection therewith, in addition to the disputed contract benefit, you shall have no right to sue us for breach of implied covenants or unreasonable withholding of contract benefits.

To the extent that we prevail in the arbitration, the arbitrators may award us any "Claims Expenses" and/or "Damages" incurred or paid under reservation of rights in excess of our contract obligations as determined by the arbitrators.

In Witness Whereof, we have caused the President and Secretary to execute and attest these presents; but this policy shall not be valid unless countersigned in accordance with state law by a duly authorized representative of this Company.

SECRETARY                                         PRESIDENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

This endorsement sets forth the minimum earned premium for the policy.  The minimum earned premium for this policy is calculated in accordance with the following:

1.  The minimum earned premium for the policy period is the total policy premium as shown on the policy declarations page plus any premium adjustment by endorsements and any additional premium developed by audit.

2.  Audits that indicate a return premium will not reduce the minimum as stated in paragraph (1).

3.  If the insured cancels this policy and the policy is not subject to audit, the return premium will be 90% of the unearned policy premium; however in no event will the Company retain less than **25%** of the minimum earned premium shown in 1. above.

4.  If the insured cancels this policy and the policy is subject to audit, the earned premium will be determined by final audit, however in no event will it be less than the minimum earned premium as described in #1 above.

5.  If the Company cancels the policy for any reason, other than for non-payment of premium, then the insured will be returned the full amount of the unearned premium without any minimum premium restrictions.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

# James River Insurance Company
## Privacy Policy

**We do not sell customer information to nonaffiliated third parties, and we do not share customer information with nonaffiliated third parties except those parties who perform contractual services for us, and parties to which we are authorized to provide information by law.** In addition, when we provide information to affiliates or non-affiliates, we limit those disclosures to information about your transactions and experiences with us and to disclosures otherwise permitted by law. You do not need to take any action to prevent us from selling or sharing information we obtain about you.

**We use security measures and training in our effort to protect the customer information we collect.** We protect the information we obtain about you by maintaining physical, electronic and procedural safeguards.

**We collect the following types of information about you when you purchase or use our products and services.** Most of the information that we obtain about you comes directly from you, such as through the insurance applications you submit when requesting insurance products. These applications and other inquiries we make of you allow us to learn information that we may use to contact you in the future, such as your name, address, telephone number and e-mail address. In addition, insurance applications and other information you provide enables us to determine the type and value of your insured property, the types of insurance coverages you have or in which you might be interested, and similar information.

If you visit an Internet site that we maintain, we might request or obtain information that will enable us to identify you as a registered user, such as your name, a user identification name, a password, password reminders, and your Internet service provider. We might use a "cookie" to retain some of this information. We also might obtain information about your operating system, web browser and similar information to enable us to improve the operation of our site.

When we consider products and services in which you may be interested, we often review information that we have about your past transactions with us or our affiliates, such as your existing or former policy coverages, premiums and payment history. In addition, we may learn information about your transactions with nonaffiliated third parties, including the types of products or services you obtained from them and your experiences with them. Finally, we may obtain other information from third parties that has a bearing upon your eligibility for the products or services you seek from us. This information may include your credit report or information about your creditworthiness, or other information maintained by consumer reporting agencies.

**We provide customer information only to our affiliates and to nonaffiliates that must protect your customer information.**

**We also may provide information as mentioned in this notice to nonaffiliated third parties that perform services for us or perform functions on our behalf, such as marketing and research, or to other financial institutions with which we have joint agreements for activities such as marketing. By law, our contracts with these parties must prevent them from using the information they receive about you except as described in this notice.**

Finally, we may share customer information as permitted by applicable law. This means that we will share information with parties as necessary to affect, administer, or enforce transactions that you request. For example, we might provide information to a company that processes, prints and mails our insurance policies to you, or to a company that adjusts claims under your policies. We also might disclose customer information to other entities specified by law, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, or civil and regulatory authorities. Federal law sets the limitations on these types of disclosures.

**We strive to keep our records as accurate as possible.** We attempt to maintain accurate records about you and we will gladly make appropriate corrections when you notify us. Of course, we do not control the accuracy of information gathered and provided by third parties, and you may need to notify third parties directly if you believe that any information we received from them is inaccurate. You may request the name and address of any consumer-reporting agency from which we obtain a report on you. You then may contact that consumer-reporting agency to request a copy of the report it makes or to advise of any changes to the information they maintain and report.

We will provide one copy of this Privacy Policy to joint contract holders. Please share this information with everyone covered under your policy or contract.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLLY.

# FLORIDA POLICY CHANGES

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The CANCELLATION AND NON-RENEWAL Condition of this Policy is deleted and replaced with the following:

**CANCELLATION AND NON-RENEWAL**

A.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

B.  If the policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

   (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      (a)  A material misstatement or misrepresentation; or

      (b)  A failure to comply with our underwriting requirements.

C.  If the policy has been in effect for more than 90 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

   (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2)  45 days before the effective date of cancellation if we cancel for any other reason.

D.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

E.  Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.

F.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even of we have not made or offered a refund.

G.  If notice is mailed, proof of mailing will be sufficient proof of notice.

   If we elect not to renew this Policy for an additional "policy period", we shall mail written notice, stating the reason for non-renewal, to the first Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 45 days prior to the end of the policy period.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The coverage under this policy does not apply to any loss, injury, claim or damage arising directly or indirectly out of or relating to:

1.  Any act of "terrorism"; or

2.  Any action authorized by a government authority or agency for the purpose of preventing or minimizing the consequences of any act or threat of "terrorism".

"Terrorism" means an activity by an individual acting alone, or individuals acting as a part of a group, that involves any violent act, including the threat of any activity or preparation for an activity that:

1.  Causes either:

    a.  Damage to property;

    b.  Injury to person(s); or

    c.  Loss of income or increased expense; and

2.  Appears to be intended to:

    a.  Intimidate or coerce a civilian population;

    b.  Disrupt any segment of an economy;

    c.  Influence the policy of a government by intimidation or coercion;

    d.  Affect the conduct of a government by destruction, assassination, kidnapping or hostage-taking; or

    e.  Advance a political, religious or ideological cause; or

3.  Involves the use, release, dispersal, discharge, escape or application of:
    a.  Nuclear materials, or directly results in nuclear reaction or radiation or radioactive contamination; or

    b.  Pathogenic or poisonous biological or chemical materials.

"Terrorism" shall also include any incident determined to be such by any official, department or agency that has been specifically authorized by federal statute to make such a determination.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

It is agreed that in the event of the failure of this Company hereon to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 7130 Glen Forest Drive, Suite 210, Richmond, Virginia, 23226 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMBINED GENERAL ENDORSEMENT

1.  **ABSOLUTE ASBESTOS, LEAD OR SILICA DUST - EXCLUSION**

    Injury or damages, including any claim or suit, arising out of, resulting from, caused or contributed to by Asbestos, Lead or Silica Dust is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same, including but not limited to any:

    a.  Loss, damage, cost, liability or expense of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances of or from Asbestos, Lead or Silica Dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

    b.  Existence of Asbestos, Lead, or Silica Dust, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    c.  Loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of Asbestos, Lead, or Silica Dust, or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party in response to the effects or alleged effects of Asbestos, Lead, or Silica Dust; or

    d.  Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to or assess the effects of same; or

    e.  Actual or alleged Asbestosis, Lead paint poisoning, Silicosis or any other similar condition.

    This exclusion applies regardless of whether:

    a.  An alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or wrongful act.

2.  **ABSOLUTE POLLUTION AND POLLUTION RELATED LIABILITY - EXCLUSION**

    Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy.

    This insurance does not apply to any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

    a.  Any loss, damage, cost, liability or expense of any type for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

    b.  Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order,

governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

This exclusion applies regardless of whether:

1. An alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or, wrongful act.


### 3. DUTY TO DEFEND

Where there is no coverage under this policy, there is no duty to defend.

### 4. EMPLOYER'S LIABILITY – EXCLUSION

This insurance does not apply to any claim, suit, cost or expense arising out of "Bodily Injury" to:

a.  Any employee of a Named Insured arising out of and in the course of:

  (1) Employment by the Insured; or,

  (2) While performing duties related to the conduct of the Insured's business; or

b.  The spouse, child, parent, brother, sister or relative of that employee as a consequence of Paragraph 1 above.

This exclusion applies:

a.  Whether an Insured may be liable as an employer or in any other capacity; and/or,

b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury; and/or,

c.  To liability assumed under any "Insured Contract."

Wherever the word "employee" appears above, it shall mean any member, associate, "leased worker", "temporary worker" or any person or persons loaned to or volunteering services to you.

### 5. EMPLOYMENT-RELATED PRACTICES - EXCLUSION

Employment-Related Practices, regardless of allegations, are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

a.  Refusal to employ any person or termination of employment of any person; or

b.  Any employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or discrimination; or

   c.   Consequential "Bodily Injury" or "Personal and Advertising Injury" as a result of 1. or 2.; or

   d.   Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor are any expenses or obligation to share damages with or repay another whom must pay from same.

## 6.   WAR RISK - EXCLUSION

This Company shall not be liable for loss caused directly or indirectly by:

   a.   Hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual, impending or expected attack by:

      (1)   Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

      (2)   Military, naval or air forces; or

      (3)   An agent of such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission of fusion shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.

   b.   Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

## 7.   TERMS, CONDITIONS AND PREMIUM

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIOR AND PENDING LITIGATION EXCLUSION

| SCHEDULE |
|---|
| Date 06/01/2004 |

This policy does not apply to any "Claim Expenses" or "Damages" by reason of any litigation pending on or prior to the date shown in the above Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

This Policy does not apply to any "Claim" against the "Insured" based on or directly or indirectly arising out of any actual or alleged "Wrongful Acts" or "Related Wrongful Acts" in any way connected with:

1. the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or,
2. any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or,
3. request, demand, order by or on behalf of a governmental authority for testing, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any "Claim" to which this endorsement applies.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# BODILY INJURY/PROPERTY DAMAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

| PROFESSIONAL LIABILITY COVERAGE

**SECTION III – EXCLUSIONS**, item **d.** is deleted and replaced with the following:

d. This policy does not apply to any "claim" against the "insured" based on directly or indirectly arising out of any actual or alleged "bodily injury" or "property damage" unless the "claim" results solely from the performance or failure to perform "professional services" by or at the direction of the "Insured".

In addition, the following exclusions are added to the Policy:

This Policy does not apply to apply to any "Claim" against any "Insured":

1. Based on directly or indirectly arising out of or involving any "property damage" or "bodily injury" arising from tangible property which is owned or occupied by or rented to or used by the "Insured" or is in the care, custody or control of the "Insured" or to which the "Insured" is exercising physical control, including but not limited to any claim based upon or arising out of the maintenance of, or failure to maintain such tangible property;

2. Based on directly or indirectly arising out of or involving any "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to the "Insured. Use includes operation, loading and unloading;

3. Based on directly or indirectly arising out of or involving any physical, sexual or mental abuse, molestation or harassment or any "claim" for failure to prevent, bar, halt, supervise, employ, train, retain or control any physical, sexual or mental abuse, molestation or harassment;

4. Based on directly or indirectly arising out of or involving any "claim" for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of any product or component part associated with your professional services if such product or component part is recalled from the market or from use by any person or organization because of a defect, deficiency, inadequacy or dangerous condition in it;

5. Based on directly or indirectly arising out of or involving any "claim" for which coverage would be afforded under a Premises/Operations Liability Policy, Commercial General Liability Policy, Products/Completed Operations Liability Policy, Umbrella or Excess Policy even if Damages or Claims Expense are not covered in whole or in part by such policy or policies for any reason but not limited to an exclusion, a reduction or exhaustion of the limits of insurance under such policy or policies or any failure to maintain such policy or policies; or

6. Based on directly or indirectly arising out of or involving any "bodily injury" to any employee, subcontractor, independent contractor or any employee of any subcontractor or independent contractor or any "claim" under any workers' compensation, unemployment compensation, employer's liability, disability benefits or any similar law.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AWARENESS PROVISION

If during the "policy period" the "Insured" shall become aware of any "wrongful act" that may reasonably be expected to be the basis of a "claim" against the "Insured" and if the "Insured" shall during the "policy period" give written notice to the Company of such "wrongful act" and the reason for anticipating a "claim", including but not limited to the:

1. Specific "wrongful act";
2. "Damages" which have or may result from such "wrongful act"; and
3. Circumstances by which the "Insured first became aware of such "wrongful act"

then any such "claim" that may subsequently be made against the "Insured" arising out of such "wrongful act" shall be deemed for the purposes of this insurance to have been made during the "policy period."

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# ARCHITECTS AND ENGINEERS - PROFESSIONAL LIABILITY INSURANCE

## JAMES RIVER INSURANCE COMPANY
7130 Glen Forest Drive, Suite 210
Richmond, Virginia 23226-3754

# DECLARATIONS

POLICY NUMBER: 00004772-3

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS:
SA Tech Engineering, Inc.
123 North West 13th Street #309
Boca Raton, FL 33432

PRODUCER:       13218
Roehrig & MacDuff
111 2nd Avenue NE, Suite 610
Saint Petersburg, FL  33701

**THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF EXERCISED. THE PAYMENT OF CLAIM EXPENSES REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**ITEM 2.** POLICY PERIOD:                    From: 06/01/2007          To: 06/01/2008
12:01 A.M. Standard Time at your mailing address

**ITEM 3.** PROFESSIONAL SERVICES:  Structural Engineering Services

**ITEM 4.** LIMITS OF INSURANCE:

    A.  Each Claim Limit of Liability ................................................................$1,000,000
    B.  Annual Aggregate ............................................................................$1,000,000

**ITEM 5.** RETROACTIVE DATE: 5/11/1994

**ITEM 6.** DEDUCTIBLE:      $25,000        each "Claim"

**ITEM 7.** PREMIUM: $14,200

**ITEM 8.** EXTENDED REPORTING PERIOD: <u>12</u> months at <u>100</u>% of the total annual premium.

**ITEM 9.** ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:
    See attached Schedule A – Schedule of Forms

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO. 00004772-3**

**FORM NUMBER**      **DESCRIPTION**

| | |
|---|---|
| PL0013US-0603 | Architects and Engineers Professional Liability Declarations |
| AP0001US-0403 | Schedule A |
| PL0005US-0603 | Architects and Engineers Professional Liability Policy |
| AP0100US-0403 | Privacy Policy |
| AP1014US-1005 | Florida Policy Changes |
| AP2103US-0906 | Minimum Policy Premium |
| AP2112US-0804 | Terrorism Exclusion |
| AP2113US-1006 | Service of Suit |
| IL0021-0702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| PL2101US-0603 | Combined General  Endorsement |
| PL2109US-0603 | Prior and Pending Litigation Exclusion |
| PL2111US-0703 | Fungi or Bacteria Exclusion |
| PL2114US-0505 | Bodily Injury/Property Damage Limitation Endorsement |
| PL2118US-0903 | Awareness Provision |

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY
PLEASE READ CAREFULLY

---

**THIS POLICY IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS AND PROVIDES PROFESSIONAL LIABILITY COVERAGE FOR THOSE CLAIMS THAT OCCUR SUBSEQUENT TO THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THIS POLICY IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.**

---

## PROVISIONS

Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this Policy.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to SECTION II - DEFINITIONS.

In consideration of payment of the premium, and in reliance upon the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, and subject to the Declarations and all the terms and conditions of this Policy, including any endorsement hereto, we agree with you as follows:

SECTION I - COVERAGES

1.  **Insuring Agreement**

    a.  We will pay on behalf of the "Insured" those sums in excess of the deductible that the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to us in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable.  The "Wrongful Acts" must have been committed on or subsequent to the "Retroactive Date" specified in the Declarations and before the end of the "Policy Period".

    b.  **Defense and Settlement**

    We shall have the right and duty to defend any covered "Claim" brought against the "Insured" even if the "Claim" is groundless, false or fraudulent.  However, we will have no duty to defend the "Insured" against any "Claim" seeking "Damages" to which this insurance does not apply.  The "Insured" shall not admit or assume liability or settle or negotiate to settle any "Claim" or incur any "Claims Expenses" without our prior written consent.  We shall have the right to appoint counsel and to make any investigation and defend any "Claim" as we deem necessary.

    We shall not settle any "Claim" without the written consent of the "Named Insured".  If the "Named Insured" refuses to consent to a settlement recommended by us and acceptable to the claimant, then our Limit of Liability under this Policy with respect to such "Claim", shall be reduced to the amount of "Damages" for which the "Claim" could have been settled plus any "Claims Expenses" incurred up to the time we made our recommendation to the "Named Insured".  This amount shall not exceed the unexhausted Limit of Liability as specified in the Declarations.

We shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle any "Claim" after the applicable Limit of Liability specified in the Declarations has been exhausted by payment of "Damages" and "Claims Expenses" or any combination thereof. In such case, we shall have the right to withdraw from further investigation, defense, payment or settlement of such "Claim" by tendering control of such "Claim" to you.

"Claims Expenses" are a part of and not in addition to the Limit of Liability. The payment by us of "Claim Expenses" reduces the applicable Limit of Liability.

## SECTION II – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

A. "Bodily Injury" means injury to the body, sickness or disease, including death resulting from such injuries. "Bodily Injury" also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

B. "Claim" means a written demand for monetary damages arising out of or resulting from the performing or failure to perform "Professional Services".

C. "Claims Expenses" means:

    (1) attorneys' fees, expert witness fees and other reasonable fees and costs paid by us or by you with our prior written consent, in the investigation and defense of covered "Claims";

    (2) reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "Claim", including the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

    "Claims Expenses" does not include your employees wages or salaries or the costs of your directors, officers or employees.

    All "Claims Expenses" are a part of the Limit of Liability and Deductible and shall not be considered sums payable in addition thereto.

D. "Damages" means any compensatory amount which you become legally obligated to pay as a result of a covered "Claim", including judgments, awards and settlements.

    "Damages" shall not include:

    (1) civil or criminal fines, penalties, sanctions, whether pursuant to law, statute, regulation or court rule;

    (2) punitive and exemplary damages and the multiplied portion of multiplied damages:

    (3) any matter, sum or award that is uninsurable under the law; or

    (4) the cost to comply with an injunctive or other non-monetary or declaratory relief.

E. "Disciplinary Proceeding" means any proceeding by a regulatory or disciplinary official or agency to investigate charges made by a client or former client alleging professional misconduct in performing or failing to perform "Professional Services".

F. "Insured" means the "Named "Insured" and:

    (1) any past, present or future principal, partner, officer, director, stockholder, trustee or employee of the "Named Insured" but only with respect to "Professional Services" performed on behalf of the "Named Insured";

(2) independent contractors who are natural persons, or any temporary or leased personnel but only while acting under your direct supervision and on your behalf;

(3) the estate, heirs, executors, administrators or legal representatives of any "Insured" described in subpart (1 or (2) above in the event of such "Insured's" death, incapacity, insolvency or bankruptcy but only to the extent that such "Insured" would otherwise be provided coverage under this Policy; or

(4) Any "Subsidiary".

G. "Named Insured" means the entity or person named in the Declarations.

H. "Policy Period" means the period of time shown in the Declarations

I. "Professional Services" means those services which you are legally qualified to perform for others in your capacity as an architect, engineer, landscape architect, land surveyor or planner.

J. "Property Damage" means any injury to or loss or destruction of tangible property, including the loss of use thereof.

K. "Related Claims" means all "Claims" arising out of a single "Wrongful Act" or series of "Related Wrongful Acts" in the performance of or failure to perform "Professional Services".

L. "Related Wrongful Acts" means all "Wrongful Acts" that have as a common nexus any fact, circumstance, situation, event, transaction cause or series of casually connected facts, circumstances, situations, events, transactions or causes.

M. "Retroactive Date" means the date specified in the Declarations.

N. "Subsidiary" means any entity in which the "Named Insured" owns either directly or indirectly 50% or more of the outstanding voting stock.

O. "Wrongful Act" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty in the performing of or failure to perform "Professional Services".

## SECTION III - EXCLUSIONS

This Policy does not apply to any "Claim" against the "Insured":

a. Based on or directly or indirectly arising out of:

    (1) A "Professional Service" rendered prior to the effective date of the Policy if any "Insured" knew or could have reasonably foreseen that the "Professional Service" could give rise to a "Claim";

    (2) Any common fact, circumstance, transaction advice or decision involved in a "Professional Service" reported as a "Claim" or potential "Claim" under any prior Policy; or

    (3) Any "Claim", suit, act, error or omission disclosed in the application for this Policy.

b. Based on or directly or indirectly arising from an "Insured's" "Professional Services" for:

    (1) Any other "Insured" under the Policy;

    (2) Any firm, organization, entity or trust not named in the Declarations in which the "Insured"

        (a) has or had any ownership interest;

        (b) is or was a director, officer, partner, principal shareholder or employee; or,

        (c) at any time managed, operated or exercised direct or indirect control.

c.   Based on or directly or indirectly arising out of any actual or alleged liability assumed by you under any contract or agreement, unless such liability would have attached to you even in the absence of such contract.

d.   Based on or directly or indirectly arising out of any actual or alleged "Bodily Injury" or "Property Damage".

e.   Based upon or directly or indirectly arising out of any express warranty or guarantee.

f.   Based on or directly or indirectly arising out of or resulting from:

   (1)   Any act committed with knowledge of its wrongful nature or with the intent to cause damage; or,

   (2)   The gaining by the "Insured" of any personal profit, gain or advantage to which the "Insured" is not legally entitled; or

   (3)   Any disputes over fees for services; or,

   (4)   Any criminal, fraudulent, or dishonest act. However, we shall defend such allegations against the "Insured" if it involves a "Claim" otherwise covered under the Policy until final adjudication; or,

   (5)   Judgments or awards arising from acts or omissions deemed uninsurable by law.

g.   Based on or directly or indirectly arising out of or resulting from infringement of patent, copyright, trademark, service mark or trade name; or unfair competition based upon actual or alleged infringement of patent, copyright, trademark, service mark, or trade name.

h.   Based on directly or indirectly arising out of or resulting from any "Claim" based on the unauthorized access to the "Insured's electronic data processing system.

i.   Based on directly or indirectly arising out of any "Disciplinary Proceeding".

j.   Based on directly or indirectly arising out of or resulting from the design or manufacture of any goods or products which are sold or supplied by you or by others under license from you.

k.   Based on directly or indirectly arising out of or resulting from the cost to repair or replace faulty construction workmanship or materials in any construction, erection, fabrication, installation, assembly or manufacturing process if performed or provided by you, including materials, parts or equipment furnished in connection therewith.

l.   Relating in whole or in part to the dissolution of the firm.

SECTION IV – LIMIT OF LIABILITY

1.   Our maximum liability for all "Damages" and "Claims Expenses" resulting from each "Claim" covered under this Policy shall not exceed the amount stated in the Declarations as LIMIT OF LIABILITY – EACH "CLAIM". Our maximum aggregate liability for all "Damages" and "Claims Expenses" resulting from all "Claims" covered by this Policy shall be the aggregate limit of liability stated in the Declarations as LIMIT OF LIABILITY – AGGREGATE.

2.   All "Claims" alleging, based upon, arising out of or attributable to the same "Wrongful Act" and "Related Wrongful Acts" shall be deemed to be a single "Claim" regardless of whether made against one or more "Insured" and such "Claim" shall be deemed first made on the date the earliest of such "Claims" is first made even if such date is before the "Policy Period"

3.   The number of "Insureds" covered by the Policy shall not operate to increase the Limits of Liability.

4.   Two or more "Claims" or suits arising out of the same, related or continuous "Professional Services" shall be considered a single "Claim".

5.   If two or more Polices of insurance issued by us apply to the same "Claim" or "Claims" for which any "Insured" is legally liable, we shall not be liable under this Policy for more than the Limit of Liability of

that Policy issued by us which has the highest applicable Limit of Liability. If the Limit of Liability on each Policy is the same, only one limit will apply.

## SECTION V – DEDUCTIBLE

We shall only be liable for those amounts payable as "Damages" and/or "Claims Expenses" which are in excess of the applicable deductible stated in the Declarations. The "Deductible" shall apply separately to each "Claim" and shall be paid by you. You shall promptly make direct payments within the deductible to the appropriate parties as designated by us. We shall have no obligation to make payments within the deductible and then seek reimbursement from you.

## SECTION VI - TERRITORY

This Policy only applies to "Claims" which are brought in the United States, its territories or possessions, or Canada.

## SECTION VII – CONDITIONS

1.  Bankruptcy

    Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Policy.

2.  Notice of "Claims"

    As a condition precedent to our obligations under this Policy, you shall give written notice to us as soon as practicable, but in no event later than 60 days after the end of the "Policy Period" of any "Claim" made against you. You shall immediately forward to us every demand, notice, summons or other process or pleading received by you or your representative. You will not, except at your own cost, voluntarily make any payment, assume any obligation, or incur any expense.

3.  Assistance and Cooperation

    You shall cooperate with us and provide us with all information and assistance which we reasonably request including without limitation attend hearings, depositions and trials and assisting in effecting settlements, securing and giving evidence and conducting the defense of any ""Claim"" covered by this Policy. You shall do nothing that may prejudice our position.

4.  Legal Action Against Us

    No person or organization has a right under this Policy to join us as a party or otherwise bring us into a suit asking for "Damages" from an "Insured".

    No action shall be brought against us, unless, as a condition precedent thereto, you shall have fully complied with all the terms of this Policy, and the amount of your obligation to pay shall have been fully determined either by judgment against you after actual trial and appeal or by written agreement between you, the claimant and us.

5.  Other Insurance

    This Policy shall be excess over any other valid and collectible insurance, self-insurance or indemnification available to you, whether such other insurance or indemnification is stated to be primary, contributory, excess, contingent, self insurance or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy.

6.  Representations

    By accepting this Policy, you agree:

A.   The statements in the Declarations are accurate and complete;

B.   Those statements are based upon representations you made to us; and

C.   We have issued this Policy in reliance upon your representations.

7.   Subrogation

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery against any person or organization and you shall execute and deliver instruments and papers and whatever else is necessary to secure such rights. You must do nothing after a ""Claim"" is made to impair such rights.

8.   "Named "Insured"" as Sole Representative

The "Named Insured" shall act on behalf of all "Insureds" with respect to completing the Application for this insurance, including representing the truth and completeness of all information as required including providing Notice of "Claim" or Loss, giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Extended Reporting Period.

9.   Cancellation and Non-Renewal

A.   The "Named Insured" shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

B.   We may cancel this policy by mailing or delivering to the "Named Insured" written notice of cancellation at least:

1.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

2.   30 days before the effective date of cancellation if we cancel for any other reason

C.   We will mail or deliver our notice the "Named Insured's" last mailing address known to us.

D.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

E.   If this policy is cancelled, we will send the "Named Insured" any premium refund due.  If we cancel, the refund will be pro rata.  If the "Named Insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

F.   If notice is mailed, proof of mailing will be sufficient proof of notice.

If we elect not to renew this Policy for an additional "Policy Period", we shall mail written notice to the "Named Insured" at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the "Policy Period".

10.   Acquisitions, Mergers and Material Changes

In the event that after the inception date of this Policy you:

A.   acquire all or substantially all of the assets of another entity; or,

B.   merge with another entity such that you are the surviving entity; or,

C.   create or acquire a subsidiary; or,

D.   otherwise change your business as described in the application in a manner material to the risk underwritten by us,

then no coverage shall be afforded under this Policy for the assets acquired by you; the "Wrongful Acts" of the entity merged with, acquired by or created by you; or your changed business activities unless and until:

A.   you provide written notice of any of the above events to us not more than thirty (30) days after the effective date thereof; and,

B.   you provide us with such pertinent information that we may deem necessary; and,

C.   you accept any special terms, conditions, exclusions and pay any additional premium charge required; and,

D.   we, at our sole discretion, specifically agree in writing to provide such coverage.

Should we agree to provide coverage for the newly purchased or created entity or subsidiary, or for your changed business activities, such coverage will be only for ""Wrongful Acts" first committed following the date we agree to provide such coverage.


11.   Assignment

Assignment of any interest by you under this Policy shall not bind us without our written consent.


## SECTION VIII – EXTENDED REPORTING PERIOD

In the event of cancellation or non renewal of this Policy, by either the "Named "Insured"" or the Company, for reasons other than non payment of premium or material misrepresentation in the Application, you shall have the right to an Extended Reporting Period as follows:

(a)   Automatic Extended Reporting Period

Coverage as provided under this Policy shall automatically continue for a period of sixty (60) days following the effective date of such cancellation or non renewal, but only with respect to "Claims" and "Wrongful Acts" committed before the effective date of such cancellation or no renewal.

(b)   Optional Extended Reporting Period

You shall have the right, upon payment of the additional premium set forth in the Declarations, to an extension of the coverage provided under this Policy for the term set forth in the Declarations following the effective date of such cancellation or non renewal, but only with respect to "Claims" for "Wrongful Acts" committed before the effective date of such cancellation or non renewal.

This right shall terminate, however, unless written notice of such election and payment of the additional premium is received by us not later than thirty (30) days after the effective date of such cancellation or non renewal.  A change in Policy terms and conditions and/or premium shall not be considered non renewal for purposes of triggering either Extended Reporting Period

The entire premium for the Extended Reporting Period shall deemed fully earned and non refundable.

The fact that the period during which "Claims" may be reported to us under this Policy is extended by virtue of the Automatic and Optional Extended Reporting Periods does not in any way increase the Limits of Liability of this Policy.

## SECTION IX – ARBITRATION

Should we disagree as to the rights and obligations owed by us under this Policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may request that the dispute be subjected to binding arbitration.

In the event that the parties cannot agree upon an arbitration forum and process, The American Arbitration Association shall be used, with each party selecting an arbitrator from the list of qualified arbitrators for insurance coverage disputes provided by that association. The two chosen arbitrators shall select a third arbitrator from the same list; if they cannot agree to a selection, the American Arbitration Association shall make the selection for them. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and of the arbitration process.

In the event you prevail in the arbitration and we promptly offer to you arbitration costs and reasonable attorney's fees incurred in connection therewith, in addition to the disputed contract benefit, you shall have no right to sue us for breach of implied covenants or unreasonable withholding of contract benefits.

To the extent that we prevail in the arbitration, the arbitrators may award us any "Claims Expenses" and/or "Damages" incurred or paid under reservation of rights in excess of our contract obligations as determined by the arbitrators.

In Witness Whereof, we have caused the President and Secretary to execute and attest these presents; but this policy shall not be valid unless countersigned in accordance with state law by a duly authorized representative of this Company.

SECRETARY ·

PRESIDENT

# James River Insurance Company
## Privacy Policy

**We do not sell customer information to nonaffiliated third parties, and we do not share customer information with nonaffiliated third parties except those parties who perform contractual services for us, and parties to which we are authorized to provide information by law.** In addition, when we provide information to affiliates or non-affiliates, we limit those disclosures to information about your transactions and experiences with us and to disclosures otherwise permitted by law. You do not need to take any action to prevent us from selling or sharing information we obtain about you.

**We use security measures and training in our effort to protect the customer information we collect.** We protect the information we obtain about you by maintaining physical, electronic and procedural safeguards.

**We collect the following types of information about you when you purchase or use our products and services.** Most of the information that we obtain about you comes directly from you, such as through the insurance applications you submit when requesting insurance products. These applications and other inquiries we make of you allow us to learn information that we may use to contact you in the future, such as your name, address, telephone number and e-mail address. In addition, insurance applications and other information you provide enables us to determine the type and value of your insured property, the types of insurance coverages you have or in which you might be interested, and similar information.

If you visit an Internet site that we maintain, we might request or obtain information that will enable us to identify you as a registered user, such as your name, a user identification name, a password, password reminders, and your Internet service provider. We might use a "cookie" to retain some of this information. We also might obtain information about your operating system, web browser and similar information to enable us to improve the operation of our site.

When we consider products and services in which you may be interested, we often review information that we have about your past transactions with us or our affiliates, such as your existing or former policy coverages, premiums and payment history. In addition, we may learn information about your transactions with nonaffiliated third parties, including the types of products or services you obtained from them and your experiences with them. Finally, we may obtain other information from third parties that has a bearing upon your eligibility for the products or services you seek from us. This information may include your credit report or information about your creditworthiness, or other information maintained by consumer reporting agencies.

**We provide customer information only to our affiliates and to nonaffiliates that must protect your customer information.**

**We also may provide information as mentioned in this notice to nonaffiliated third parties that perform services for us or perform functions on our behalf, such as marketing and research, or to other financial institutions with which we have joint agreements for activities such as marketing. By law, our contracts with these parties must prevent them from using the information they receive about you except as described in this notice.**

Finally, we may share customer information as permitted by applicable law. This means that we will share information with parties as necessary to affect, administer, or enforce transactions that you request. For example, we might provide information to a company that processes, prints and mails our insurance policies to you, or to a company that adjusts claims under your policies. We also might disclose customer information to other entities specified by law, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, or civil and regulatory authorities. Federal law sets the limitations on these types of disclosures.

**We strive to keep our records as accurate as possible.** We attempt to maintain accurate records about you and we will gladly make appropriate corrections when you notify us. Of course, we do not control the accuracy of information gathered and provided by third parties, and you may need to notify third parties directly if you believe that any information we received from them is inaccurate. You may request the name and address of any consumer-reporting agency from which we obtain a report on you. You then may contact that consumer-reporting agency to request a copy of the report it makes or to advise of any changes to the information they maintain and report.

We will provide one copy of this Privacy Policy to joint contract holders. Please share this information with everyone covered under your policy or contract.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLLY.

# FLORIDA POLICY CHANGES

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The CANCELLATION AND NON-RENEWAL Condition of this Policy is deleted and replaced with the following:

**CANCELLATION AND NON-RENEWAL**

    A.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    B.  If the policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            (a)  A material misstatement or misrepresentation; or

            (b)  A failure to comply with our underwriting requirements.

    C.  If the policy has been in effect for more than 90 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)  45 days before the effective date of cancellation if we cancel for any other reason.

    D.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    E.  Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.

    F.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even of we have not made or offered a refund.

    G.  If notice is mailed, proof of mailing will be sufficient proof of notice.

        If we elect not to renew this Policy for an additional "policy period", we shall mail written notice, stating the reason for non-renewal, to the first Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 45 days prior to the end of the policy period.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

This endorsement sets forth the minimum earned premium for the policy.  The minimum earned premium for this policy is calculated in accordance with the following:

1.  The minimum premium for the policy period is the total policy premium as shown on the policy declarations page plus any premium adjustment by endorsements and any additional premium developed by audit.

2.  Audits that indicate a return premium will not reduce the minimum as stated in paragraph 1.

3.  If the insured cancels this policy and the policy is not subject to audit, the return premium will be 90% of the unearned policy premium; however in no event will the Company retain less than 25% of the minimum premium shown in paragraph 1. above.

4.  If the insured cancels this policy and the policy is subject to audit, the earned premium will be determined by final audit, however in no event will it be less than 25% of the minimum premium as described in paragraph 1. above.

5.  If the Company cancels the policy for any reason, other than for non-payment of premium, then the insured will be returned the full amount of the unearned premium without any minimum premium restrictions.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The coverage under this policy does not apply to any loss, injury, claim or damage arising directly or indirectly out of or relating to:

1.  Any act of "terrorism"; or

2.  Any action authorized by a government authority or agency for the purpose of preventing or minimizing the consequences of any act or threat of "terrorism".

"Terrorism" means an activity by an individual acting alone, or individuals acting as a part of a group, that involves any violent act, including the threat of any activity or preparation for an activity that:

1.  Causes either:

    a.  Damage to property;

    b.  Injury to person(s); or

    c.  Loss of income or increased expense; and

2.  Appears to be intended to:

    a.  Intimidate or coerce a civilian population;

    b.  Disrupt any segment of an economy;

    c.  Influence the policy of a government by intimidation or coercion;

    d.  Affect the conduct of a government by destruction, assassination, kidnapping or hostage-taking; or

    e.  Advance a political, religious or ideological cause; or

3.  Involves the use, release, dispersal, discharge, escape or application of:
    a.  Nuclear materials, or directly results in nuclear reaction or radiation or radioactive contamination; or

    b.  Pathogenic or poisonous biological or chemical materials.

"Terrorism" shall also include any incident determined to be such by any official, department or agency that has been specifically authorized by federal statute to make such a determination.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 7130 Glen Forest Drive, Suite 210, Richmond, Virginia, 23226 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designated the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 IL 00 21 07 02 ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMBINED GENERAL ENDORSEMENT

1.   **ABSOLUTE ASBESTOS, LEAD OR SILICA DUST - EXCLUSION**

Injury or damages, including any claim or suit, arising out of, resulting from, caused or contributed to by Asbestos, Lead or Silica Dust is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same, including but not limited to any:

   a.   Loss, damage, cost, liability or expense of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances of or from Asbestos, Lead or Silica Dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

   b.   Existence of Asbestos, Lead, or Silica Dust, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

   c.   Loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of Asbestos, Lead, or Silica Dust, or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party in response to the effects or alleged effects of Asbestos, Lead, or Silica Dust; or

   d.   Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to or assess the effects of same; or

   e.   Actual or alleged Asbestosis, Lead paint poisoning, Silicosis or any other similar condition.

This exclusion applies regardless of whether:

   a.   An alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or wrongful act.

2.   **ABSOLUTE POLLUTION AND POLLUTION RELATED LIABILITY - EXCLUSION**

Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy.

This insurance does not apply to any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

   a.   Any loss, damage, cost, liability or expense of any type for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

   b.   Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order,

governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

This exclusion applies regardless of whether:

1. An alleged cause for the injury or damage is the Insured's negligent hiring, placement, training, supervision, retention, or, wrongful act.

### 3. DUTY TO DEFEND

Where there is no coverage under this policy, there is no duty to defend.

### 4. EMPLOYER'S LIABILITY – EXCLUSION

This insurance does not apply to any claim, suit, cost or expense arising out of "Bodily Injury" to:

a. Any employee of a Named Insured arising out of and in the course of:

(1) Employment by the Insured; or,

(2) While performing duties related to the conduct of the Insured's business; or

b. The spouse, child, parent, brother, sister or relative of that employee as a consequence of Paragraph 1 above.

This exclusion applies:

a. Whether an Insured may be liable as an employer or in any other capacity; and/or,

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury; and/or,

c. To liability assumed under any "Insured Contract."

Wherever the word "employee" appears above, it shall mean any member, associate, "leased worker", "temporary worker" or any person or persons loaned to or volunteering services to you.

### 5. EMPLOYMENT-RELATED PRACTICES - EXCLUSION

Employment-Related Practices, regardless of allegations, are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

a. Refusal to employ any person or termination of employment of any person; or

b. Any employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or discrimination; or

    c.   Consequential "Bodily Injury" or "Personal and Advertising Injury" as a result of 1. or 2.; or

    d.   Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor are any expenses or obligation to share damages with or repay another whom must pay from same.

## 6.  WAR RISK - EXCLUSION

This Company shall not be liable for loss caused directly or indirectly by:

    a.  Hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual, impending or expected attack by:

        (1)  Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or

        (2)  Military, naval or air forces; or

        (3)  An agent of such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission of fusion shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.

    b.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

## 7.  TERMS, CONDITIONS AND PREMIUM

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIOR AND PENDING LITIGATION EXCLUSION

| SCHEDULE |
|---|
| Date 06/01/2004 |

This policy does not apply to any "Claim Expenses" or "Damages" by reason of any litigation pending on or prior to the date shown in the above Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

This Policy does not apply to any "Claim" against the "Insured" based on or directly or indirectly arising out of any actual or alleged "Wrongful Acts" or "Related Wrongful Acts" in any way connected with:

1. the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contamination, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or,
2. any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or,
3. request, demand, order by or on behalf of a governmental authority for testing, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any "Claim" to which this endorsement applies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# BODILY INJURY/PROPERTY DAMAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE

SECTION III – EXCLUSIONS, item d. is deleted and replaced with the following:

d. This policy does not apply to any "claim" against the "insured" based on directly or indirectly arising out of any actual or alleged "bodily injury" or "property damage" unless the "claim" results solely from the performance or failure to perform "professional services" by or at the direction of the "Insured".

In addition, the following exclusions are added to the Policy:

This Policy does not apply to apply to any "Claim" against any "Insured":

1. Based on directly or indirectly arising out of or involving any "property damage" or "bodily injury" arising from tangible property which is owned or occupied by or rented to or used by the "Insured" or is in the care, custody or control of the "Insured" or to which the "Insured" is exercising physical control, including but not limited to any claim based upon or arising out of the maintenance of, or failure to maintain such tangible property;

2. Based on directly or indirectly arising out of or involving any "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to the "Insured. Use includes operation, loading and unloading;

3. Based on directly or indirectly arising out of or involving any physical, sexual or mental abuse, molestation or harassment or any "claim" for failure to prevent, bar, halt, supervise, employ, train, retain or control any physical, sexual or mental abuse, molestation or harassment;

4. Based on directly or indirectly arising out of or involving any "claim" for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of any product or component part associated with your professional services if such product or component part is recalled from the market or from use by any person or organization because of a defect, deficiency, inadequacy or dangerous condition in it;

5. Based on directly or indirectly arising out of or involving any "claim" for which coverage would be afforded under a Premises/Operations Liability Policy, Commercial General Liability Policy, Products/Completed Operations Liability Policy, Umbrella or Excess Policy even if Damages or Claims Expense are not covered in whole or in part by such policy or policies for any reason but not limited to an exclusion, a reduction or exhaustion of the limits of insurance under such policy or policies or any failure to maintain such policy or policies; or

6. Based on directly or indirectly arising out of or involving any "bodily injury" to any employee, subcontractor, independent contractor or any employee of any subcontractor or independent contractor or any "claim" under any workers' compensation, unemployment compensation, employer's liability, disability benefits or any similar law.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AWARENESS PROVISION

If during the "policy period" the "Insured" shall become aware of any "wrongful act" that may reasonably be expected to be the basis of a "claim" against the "Insured" and if the "Insured" shall during the "policy period" give written notice to the Company of such "wrongful act" and the reason for anticipating a "claim", including but not limited to the:

1. Specific "wrongful act";
2. "Damages" which have or may result from such "wrongful act"; and
3. Circumstances by which the "Insured first became aware of such "wrongful act"

then any such "claim" that may subsequently be made against the "Insured" arising out of such "wrongful act" shall be deemed for the purposes of this insurance to have been made during the "policy period."

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

IN THE CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO:  502009CA040825XXXXMB AJ

JAMES RIVER INSURANCE
COMPANY,

     Plaintiff,

vs.

SA-TECH ENGINEERING, INC.,

     Defendant.

_____/

**DEFENDANT'S ANSWER, AFFIRMATIVE
DEFENSES AND COUNTER-CLAIM**

COMES NOW, Defendant/Counter-Plaintiff, SA-TECH ENGINEERING, INC., a Florida corporation (hereinafter referred to as "SA-TECH") and hereby files its Answer, Affirmative Defenses to Plaintiff's Amended Complaint and Counter-Claim against JAMES RIVER INSURANCE COMPANY (hereinafter referred to as "JAMES RIVR"), and would state as follows:

## ANSWER

1.    Defendant/Counter-Plaintiff, SA-TECH admits the allegations contained in paragraphs 2 and 7 of the Amended Complaint.

2.    Defendant/Counter-Plaintiff, SA-TECH denies the allegations contained in paragraphs 3, 4, 5 and 6, 9, 10, 11 and 12 and demands strict proof thereof.

3.    Defendant/Counter-Plaintiff, SA-TECH is without knowledge concerning the allegations contained in paragraph 1 and demands strict proof thereof.

4.    That with regards to the allegations contained in paragraph 8, Defendant admits that Plaintiff/Counter-Defendant, JAMES RIVER issued the subject policies of insurance but is